**GREENE et al. v. BEIDLER et al.**

No. 1450-H.

District Court, W. D. New York.

March 17, 1931.

928

Edward H. Cumpston, of Rochester, N. Y., for plaintiffs.

Charles J. Williamson and Frank S. Appleman, both of Washington, D. C., for defendants.

GALSTON, District Judge.

This is an action brought under section 4915 of the Revised Statutes (as amended [35 USCA § 63]) to have the plaintiff John S. Greene decreed the inventor of the subject-matter of an interference proceeding in the United States Patent Office, in which the parties were the plaintiff Greene and the defendant Beidler.

Both Greene and Beidler claimed the same invention of an improvement in a camera mechanism for producing photographic copies of documents on opposite sides of a single sheet of film or paper which had been coated on both sides.

Greene's application for letters patent was filed August 20, 1924, Serial No. 733,062; Beidler's application was filed April 4, 1924, Serial No. 704,275. The interference proceeding was declared between these two applications on March 20, 1925. The count in the interference proceedings was:

"In a camera having an exposing chamber and light admitting means, a film holder rotatably mounted in the camera and operative to present two sides of film to light successively, film drawing means and film severing means associated and movable with the film holder, and operative means stationed in locations with relation to which the film holder is movable for imparting motion to the film drawing means and film severing means when the said film holder is in a predetermined position."

The Examiner of Interferences found in favor of Beidler, establishing the priority of invention in him; and on appeal the Board of Appeals of the Patent Office affirmed the decision of the Examiner of Interferences. Instead of appealing from that decision, the plaintiffs elected to pursue their remedy under section 4915 of the Revised Statutes.

By stipulation of the parties, certain portions of the record of the interference proceeding, No. 52166, consisting of specified testimony and exhibits, were made part of the record in this suit; the stipulation covered also certain parts of the record in another interference proceeding, No. 52165, in which Beidler was a party and which interference involved a broader conception than is set forth in the interference count in No. 52166. That record discloses that Beidler established a conception of the subject-matter of the count in issue as early as the spring of 1923, when an experimental model of the camera was made. Thereafter he ceased to be active, in actual reduction to practice, until some time in January, 1924, when he started work on the machine, in evidence as Defendants' Exhibit 3 in the interference proceeding. The Examiner of Interferences found that this machine was completed and satisfactorily demonstrated as early as the end of March, 1924; but since Beidler in his preliminary statement in the interference proceeding set forth his date of reduction as April 11, 1924, he was restricted to that showing. Nevertheless, since he filed his application for letters patent on April 4, 1924, he was permitted properly to rely on that filing date as establishing his reduction to practice.

On the other hand, while Greene, in November, 1923, entered the field by considering the possibility of making a so-called duplex machine, there was no conception by him of the device defined in the interference count until a drawing had been made for him by Landrock on January 12, 1924. The examiner found that from January 12, 1924, until April 19, 1924, Greene was diligent in building a full-size machine, Plaintiffs' Exhibit 8, and that this machine was a complete reduction to practice. The examiner held that the testimony adduced on the part of Greene was not sufficient to warrant a finding that Greene had reduced to practice prior to Beidler's established date of April 4, 1924.

In the interference proceeding both parties moved to amend their preliminary statements. Beidler in his original statement set up April 11, 1924, as the date on which he first successfully operated his photographic machine. Greene in his preliminary statement set the date of reduction to practice as of April 1, 1924. Both motions to amend these preliminary statements were denied. In addition, Greene made a motion to reopen the case after the adverse decision of the Examiner of Interferences, on the ground of newly discovered evidence, which was denied. By the newly discovered evidence he sought to establish March 22, 1924, as the actual date of reduction to practice.

The opportunity to establish March 22, 1924, was, of course, afforded him in the present cause, and through the testimony of

a number of witnesses, most of whom had not testified before the Patent Office, the plaintiffs sought to prove that on March 22, 1924, Plaintiffs' Exhibit 8, the machine made by Greene and the Photostat Corporation, was tested in the plant of the Photostat Corporation.

Witnesses Schu and Demler of the Demler Art Corporation, whose book entry in respect to an estimate for enameling work on the machine, Plaintiffs' Exhibit 8, fixes March 22, 1924, as the day on which they saw Exhibit 8 in the plant of the plaintiff corporation, testified that they visited the plant of the Photostat Corporation that day and saw the machine.

Landrock, of the plaintiff company, testified to the receipt on March 22, 1924, from the Auburn Ball-Bearing Company of Rochester, of the ball-bearing ring for supporting the turntable. The receipt slip is Plaintiffs' Exhibit 12.

Meyer, of the Liberty Tool & Die Corporation, testified that on a certain Saturday in the spring of 1924, he called at the plant of the Photostat Corporation and assisted in fitting the bearing rings in the grooves provided for them in the turntable castings. This witness said that when he arrived at the Photostat plant, the paper magazine and the upper turntable base were out of the machine for the purpose of fitting in the bearings. He said that he had machined the aluminum casting portion of the turntable some ten days before this visit. He recalled that the machine was turned by hand at the test made that day.

Butz, another of plaintiffs' witnesses who did not testify in the interference proceeding, testified that he saw the machine assembled outside the dark room, and that Landrock asked him to stay that Saturday afternoon to help test the machine by making a number of prints. With respect to the operation he said:

"Mr. Landrock took care of the revolving end of the machine and I took care of the lights. Every time he made an exposure on one side of the paper I would turn the lights off and Mr. Landrock would revolve the paper magazine and then again close the door whereby I would turn the lights on and he would take the second exposure."

The resulting prints, he testified, were good. Butz testified that Meyer of the Liberty Tool & Die Corporation was present that Saturday morning in the experimental room where the machine stood, and that Schu and Demler were in the plant that afternoon.

Butz fixes the date of the test as that of March 22, 1923, because that was the birthday of his infant child.

The witness Ulrech corroborated Butz in his statement that the test was made on a Saturday afternoon and on the birthday of Butz's infant son. He likewise testifies to the visit of Schu and Demler and to having seen the wet prints from the hypo tray, which Landrock hung on the edge of the bench next to where the witness was working. That was the only occasion on which he saw Schu and Demler at the plant together.

The date March 22d is again indicated as the date of test by the witness Kimmel. He recalled waiting to receive the ball bearing for the turntable, which was the last thing that was put in the machine before its operation, and on that day he saw Meyer of the Liberty Tool & Die Corporation put the bearing rings in the turntable.

From the foregoing there is ample evidence to find that a test was made of a machine of the duplex type on March 22, 1924, and from the testimony offered by Landrock and Butz it appears that the test was successful.

There is also evidence to support the conclusion that the machine thus tested was such a machine as is defined in the interference count. It is true, as admitted by plaintiffs' witnesses, that the machine as operated lacked the ring gear pinion and crank for rotating the turntable; but the grooves and attaching means for these parts had all been provided in the machine, so that all that remained was to set them in place on receipt from the mill that was making them. The Coger layouts made in February made provision for the commercial form of the ring gear pinion and crank. The test then revealed the success of the structure and resulted in the commercial manufacture and sale, without further experimenting or designing.

It makes no difference, either, what form of stops, whether spring or plate, were used to limit the movement of the turntable. They do not form a part of the invention and either kind would operate.

For the foregoing reasons, I conclude that there was a reduction to practice of the device defined in the interference count on March 22, 1924.

But the defendants contend that under the law of Barrett v. Koppers (C. C. A.) 22 F.(2d) 395, the testimony in respect to the reduction to practice on March 22, 1924, should not have been admitted.

The present case is readily distinguishable. The plaintiffs produced all the evidence which they had available during the interference proceeding. It was only the belated recollection of the witness Butz, with the aid of his wife, which enabled him to fix March 22, 1924, as the day of test of Plaintiffs' Exhibit 8; then followed the piecing together of the testimony in corroboration. That circumstance enabled the plaintiffs to marshal witnesses Meyer, Schu, Demler, Butz, Ulrech, and Kimmel, who for the first time testified, not before the Patent Office, but in this cause. The stipulated testimony of Butz in the interference proceedings did not, of course, cover the new evidence presented herein.

The defendants offered no new testimony in this cause as to the reduction to practice of Beidler, but relied wholly on the testimony given in the two interference proceedings. From that testimony it appears that Beidler made a successful reduction to practice on March 24, 1924. This was two days later than the Greene reduction to practice.

There remains, therefore, for determination the question as to who was the first to conceive the invention and whether such person was diligent in reducing his invention to practice.

The evidence before the Patent Office satisfies me that Beidler was the first to conceive the invention. His showing on conception was in the form of a demonstrating model which was built for him by the witness Smith. There is varying testimony as to when the work on the demonstrating model was begun; whether in February or March, 1923, however, makes not much difference, for Greene's conception was much later.

The burden rests, however, on Beidler to prove that he was diligent at the time that Greene entered the field, or certainly before Greene's conception. The proof leaves no doubt in my mind, as it left none in the mind of the Court of Customs and Patent Appeals, that there was not reasonable diligence on the part of Beidler between May 25, 1923, and January 1, 1924. That court said, in Beidler v. Caps et al., 36 F.(2d) 122, 125, 17 C. C. P. A. 703:

"Assuming without deciding that the doing of urgent and necessary work upon other machines in the Rectigraph plant, 'upon which its life depended,' would excuse nonactivity on the machine here involved between May 25, 1923, and January 1, 1924, if Smith, the mechanic, was the only person who could build the machines required for the operation of the factory, or who could be trusted with the building of the machine here involved, we would observe that there is no evidence tending to show that other mechanics could not have been employed to build the machines necessary for the Rectigraph factory, or that no other mechanic could be found who could be trusted with knowledge of appellant's invention and build it. It appears from the evidence that Smith was a skilled mechanic who, prior to his employment by Beidler, had been employed as an expert mechanic by a check writer concern, by a pump factory, and by an elevator works in the same capacity. It does not appear that he had ever had any experience in building photographic machines of any character. It does not appear, therefore, that Smith had any qualifications for the building of the machines referred to that any expert mechanic in general machine construction would not possess.

"In order to warrant a finding of diligence under the facts in this case, it should appear at least that appellant made efforts to secure other mechanics to do the necessary work required by the factory, leaving Smith free to carry out appellant's invention by the construction of a machine with reasonable promptness after May 25, 1923. There is no such evidence in the case."

Now the proofs show that Greene entered the field on or about November 15, 1923. That likewise was the determination of the Examiner of Interferences. Plaintiffs' witness Landrock said that in that month Greene showed him two sketches and explained to him the idea of a camera by which a sheet of paper or a roll of paper could be revolved on a turntable, so that first one side of the paper and then the other side of the paper could be exposed to light, to a lens, and to a prism. Perhaps this was not a complete disclosure of Greene's conception, and it remained for additional drawings to be made to make everything explicit. The drawing, however, of January 12, 1924, was deemed by the Examiner of Interferences to be a conception of Greene's invention, and it may be so regarded.

Now in November, 1923, Beidler was certainly not active in the development of his invention, and there is no convincing proof that he was diligent at any time from May, 1923, to January 12, 1924; for though in Beidler v. Caps, cited, the court wrote that Beidler was diligent from January 1, 1924, until the completion of his machine, I can find no satisfactory evidence in the record fixing such

date. That finding of the court was not material to the interference pending before it and had no bearing in the determination of that interference.

The only testimony of renewed activity of Beidler after May, 1923, was given in the interference proceeding by his mechanic Smith and himself. Smith testified that the work on the "1824" machines was finished "about the 1st of January, 1924," and again that this work was finished "in the forepart of January, 1924." Beidler said that Smith finished these machines "in January, 1924." From such testimony one cannot determine just when in January, the "1824" machines were finished, and consequently one cannot determine on what day thereafter the work on Defendants' Exhibit 3 was begun.

Smith testified:

"Mr. Beidler came to me again after I was through with the 1824 machine. 'Well,' he said, 'you got the 1824 machines finished?' I said, 'Yes.' 'Now,' he said, 'I wish you would get at the Duplex machine and finish it.' I said, 'Say, Mr. Beidler,' I says, 'you have asked me that question now two or three different times, and,' I said, 'whenever I get started to do anything on it,' I says, 'you got this job, you got that job, there is something pulling me off from it all of the time.' I says, 'If you would let me alone and put somebody else on some of this other stuff that has got to be taken care of around here I will finish your machine, but if you don't do that I don't know when I will get finished because I am pulled off and put on, pulled off and put on until I am almost disgusted with the whole job.' He said, 'Go to work on the machine and stay there. Never mind anything else that happens.' I stayed on the machine then until it was finished."

There is no corroborating evidence offered, no records of the defendants or either of them, or of anybody else, to fix the exact date or even the approximate date on which the work on Defendants' Exhibit 3 was begun. In weighing Smith's testimony and in the effort to appraise his memory, it may be noted that he testified that the machine, Exhibit 3, was finished "along" the 1st of March, 1924, and operated in the forepart of March; whereas, Beidler testified that the machine was first tested on March 24th or March 25th.

As tending to throw further doubt on the question as to when Beidler resumed activity, he sets forth in his preliminary statement in Interference No. 52166 that, "The building of the machine (i. e. defendants' Exhibit 3) was started March 10th, 1924." Now one would not be disposed to hold him to that statement if he could successfully have explained it away either in the interference proceeding or indeed in this cause, but that he has not done. Indeed, no effort was made to do so.

■ I find, therefore, that there is no convincing proof that Beidler was active either when Greene entered the field on November 15, 1923, or at or before January 12, 1924, when Greene conceived the invention.

On the other hand, there is ample proof that Greene was diligent in reducing his invention to practice from January 12, 1924, to March 22, 1924.

In Christie v. Seybold (C. C. A.) 55 F. 69, quoted in Curtiss Aeroplane & Motor Corporation v. Janin (C. C. A.) 278 F. 454, 457, it was said that he who "first conceives, and in a mental sense first invents, a machine, art, or composition of matter, may date his patentable invention back to the time of its conception, if he connects the conception with its reduction to practice by reasonable diligence on his part, so that they are substantially one continuous act." Beidler fails to meet that test.

In Automatic Weighing Machine Co. v. Pneumatic Scale Corporation, Ltd., (C. C. A.) 166 F. 288, 295, the court, quoting from Washburn v. Gould, Fed. Cas. No. 17,214, 3 Story, 122, said:

"The law is that whoever first perfects a machine is entitled to the patent, and is the real inventor, although others may previously have had the idea, and made some experiments towards putting it in practice. * * * He is the inventor, and is entitled to the patent, who first brought the machine to perfection, and made it capable of useful operation."

And the court said:

"Can a patentee stop with his drawings and disclosure for an unreasonable time, and then, by virtue of his subsequently obtaining a patent, hold this field of invention against a rival inventor whose conception of the same invention was later, and who proceeded with diligence to build a practical machine, or to file an application for a patent? In our opinion, he cannot do this under the patent laws."

■ Finally it may be stated, as to arguments advanced by the defendants, that the present action is a trial de novo. Hernandez v. Prizma, Inc. (D. C.) 39 F.(2d) 196, and Harper v. Zimmerman (D. C.) 41 F.(2d) 261.

Plaintiffs are entitled to a decree in accordance with the foregoing opinion.

Submit proposed decree on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.