# GALLAGHER v. HIEN.

PATENTS; INTERFERENCE; DILIGENCE; TESTS; EXPERIMENTAL DEVICES.

1. Where, in an interference case, it appears that for at least a year after conception and disclosure, during which time a rival entered the field, the only effort of one of the parties towards completing his invention consisted in more or less desultory talk about his invention, indecisive efforts to get it adopted by a corporation, and in a leisurely manner making drawings of the device; and where it is shown that it would have cost but little to have actually reduced the invention to practice and to have made proper tests, and that he was free to take up this work if he so desired, and he had ample means to have at least filed an application, and was not aroused to activity until his rival's device was shown to him,—it was *held* that he was not in the exercise of reasonable diligence.

2. The same act or set of acts may or may not constitute a reduction to practice, modified, as they may be, by the special circumstances of the particular case.

3. In determining whether a device constitutes a reduction to practice, its size is not necessarily controlling, nor is mechanical perfection, or that there are "possibilites of greater excellence in shape, location, arrangement, material, or adjustment,"—essential; but it is essential that the device should show that the work of the inventor is finished physically as well as mentally, and nothing left for the inventive genius of the public.

4. It is not necessary, in order to constitute reduction to practice, that actual tests of the invention be made in order to complete the inventive act (following *Mason* v. *Hepburn*, 13 App. D. C. 86) ; but the device relied on must, however, if it has not been worked, clearly be capable of work, and not have been a mere experiment.

5. Where it appears in an interference proceeding that both parties subjected their inventions to tests, it will be deemed that it is in effect admitted by both parties that the device belongs to that class of inventions which requires actual use or thorough tests to demonstrate its practicability.

6. Where an invention undoubtedly belongs to that class which requires either actual use or thorough tests to determine its practicability,

there can be no actual reduction to practice until one or the other thing takes place and is proven.

7. Where it appears that an invention is a radical departure from previous. methods, in order to establish the fact of reduction to practice thorough tests are necessary.

8. Where the invention in controversy in an interference case is a friction-spring, and it appears from the testimony of one of the parties that the device embodying the invention was first put in a vise and subjected to pressure, but there are no facts appearing of record which show what the pressure was, nor are any facts stated which enable the court to determine whether the inventor's conclusion is justified that the result of the test was satisfactory, the fact of reduction to practice by such party is not proved.

9. Where it appeared in an interference case that a friction-spring was tested in a vise under a steam hammer, and broken under the last test, and no measurements were taken to show the tensile strength of the spring, or the pressure to which it was subjected, and no facts appear of record upon which the court can conclude that the device was adapted to perform the work for which it was built,—it was *held* that the device was a mere experimental one, and not a reduction to practice.

10. In an interference case involving the invention of improvements in friction-springs, where it appeared that the appellant was the first to conceive, disclose, and make an experimental device embodying the invention of the issue, which device was tested experimentally, but that he was the last to reduce the invention to practice, and he failed to exercise ordinary diligence in connecting his earlier conception with his later reduction, it was *held* that he failed to overcome the presumption that his rival was the first inventor, arising out of his being the earliest to apply for a patent; and the decision of the Commissioner of Patents was affirmed.

No. 282. Patent Appeals. Submitted January 12, 1905. Decided February 14, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Melville Church* and *Mr. Joseph B. Church* for appellant.

*Mr. J. Snowden Bell, Mr. Walter H. Chamberlin,* and *Mr. George L. Wilkinson* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

The question presented by this appeal calls for the determination of the title, as prior inventor, to certain improvements in friction-springs summed up in the following issue:

"1. A device of the character described comprising a series of expansible resilient rings having inclined frictional surfaces and a compressible resilient ring interposed between adjacent expansible rings and having complemental inclined frictional surfaces.

"2. A device of the character described comprising a series of open spring rings having inclined frictional surfaces and a series of members having inclined frictional surfaces interposed between said rings and engaging the inclined surfaces of the adjacent rings, whereby when said series of rings are subjected to compression they are placed under tension through engagement of the inclined surfaces thereof with the inclined surfaces of the interposed members."

While, fortunately, there is no dispute as to the facts, the conclusion to be drawn from them does not seem free from doubt as evidenced by the conflicting decisions of the various tribunals of the Patent Office. The Examiners of Interferences and the Acting Commissioner found for Hien, while the Examiners-in-Chief united in awarding priority to Gallagher.

It is established beyond reasonable doubt that Gallagher conceived and disclosed the invention about December 1, 1901, and that the device known as "Gallagher's Exhibit Friction Spring" was made in December, 1901, and very shortly thereafter subjected to certain tests.

It is equally well established that Hien's conception and disclosure were made on June 28, 1902. It also appears that, subsequent to the date of his constructive reduction to practice, by filing his application for patent on July 19, 1902, and prior to Gallagher's constructive reduction to practice by the filing of his application for patent on November 22, 1902, Hien had made an actual reduction to practice by constructing a full-size friction-spring which was tested and shown to Gallagher in the

latter part of October, 1902, and at the same time to George A. Post, president of the Standard Coupler Company.

From the foregoing statement it appears that Gallagher was the first to conceive and disclose to others the invention, and that if the device of December, 1901, is entitled to be held a reduction to practice he is entitled to an award of priority. If, however, such device is not to be so considered, he must be shown to have been exercising diligence in adapting and perfecting his invention when Hien entered the field and until his application for patent was filed in November, 1902.

The record discloses an utter lack of diligence on the part of Gallagher. From December, 1901, or January, 1902, his only efforts, until after the Hien device was shown to him, consisted in more or less desultory talk about his invention, indecisive efforts to get the Standard Coupler Company, through Mr. Post, its president, to take up the invention, and, about the latter part of September, to start, in a leisurely manner, to make drawings of the device and modifications thereof. The invention is a simple one, and no good reason is shown why he did not earlier file an application for patent. It would have cost but little to have reduced the invention to actual practice beyond any shadow of doubt, and to have made proper tests. It is attempted to be shown that Gallagher had not the means to do more than he did do, and that he was a very busy man, engaged not only in his regular employment, but was developing or assisting in the development of another line of invention. The proofs show that his time was well employed, and that he was not in a position to enter upon the manufacture of the invention. It appears, however, that from January 1, 1902, he was in receipt of a salary of $175 a month, that he was a draftsman, and further, that, though not bound by any contract to the Standard Coupler Company not to exploit the invention through others, he made no efforts to do so, and that as early as June, 1902, Mr. Dennis, secretary and treasurer of the Standard Coupler Company, expressed a willingness to become personally interested if that company did not care to take up the matter. Gallagher preferred to wait upon the pleasure of the Coupler Company, al-

though not a novice in matters relating to patents, and that was undoubtedly the reason for his inaction. The record, so far from showing that he was excusable in his lack of diligence, shows conclusively that he could have filed an application for patent at almost any time between December, 1901, and November 22, 1902. He was neither without money nor without friends to aid him in perfecting his invention and securing his rights to its exclusive ownership. He merely failed to appreciate the necessity for prompt action, and it was only the discovery that there was another Richmond in the field that spurred him to action. Gallagher's conduct is in striking contrast with that of Hien. The latter moved with most commendable promptitude, and in view of the disclosures of the record it is apparent that a patent would have probably been issued to Hien before Gallagher was roused into activity, for the Hien application was ready for allowance as early as August 18, 1902, subject to a prospective interference. It is true that in the latter part of September, 1902, the Standard Coupler Company finally decided to take up Gallagher's invention, but even after that he made haste slowly. Our conclusion on this point is that Gallagher was not diligent, and fails to excuse his lack of diligence by any situation of affairs that the well-settled rules hold to constitute sufficient excuse.

Gallagher therefore cannot prevail unless his exhibit "Friction-Spring," taken in connection with such tests as were made, constitutes a reduction to practice.

In considering this question we apprehend that the same act or set of acts may or may not constitute a reduction to practice, modified, as they may be, by the special circumstances of the particular case.

We do not think that the size of a device is necessarily controlling in determining the question of a reduction to practice. In the *Corn-planter Patent,* 23 Wall. 181, 23 L. ed. 161, a half-sized device was held to be the equivalent of a reduction to practice, but that device was actually used in planting corn, and completely demonstrated the utility and practicability of the device.

VOL. XXV.—6.

Nor do we think that mechanical perfection, or that, as has been well stated, there are "possibilities of greater excellence in shape, location, arrangement, material, or adjustment," essential for a reduction to practice. Tested by any such requirements, nearly every pioneer invention, as put upon the market, would have failed to support the patent granted for it.

Nevertheless, it is essential that a device to constitute a reduction to practice must show that "the work of the inventor must be finished, physically as well as mentally. Nothing must be left for the inventive genius of the public." 1 Robinson, Patents, p. 183.

Nor is it always essential that actual tests of the invention be made in order to complete the inventive act. *Mason* v. *Hepburn,* 13 App. D. C. 86. The device relied upon as a reduction to practice must, however, if it has not been worked, clearly be capable of work, and not have been a mere experiment. "Experiments in the direction of the desired result are not such reduction, no matter how nearly they approximate that end." 1 Robinson, Patents, p. 183.

In the case at bar it appears that Gallagher during December, 1901, caused to be made a small-sized spring composed of two inside and two outside split friction-rings. The exterior rings were something over three inches in diameter and about an inch wide, and the inner rings were somewhat smaller. He says they were made to make clear to Mr. Post and to others something of the nature of the invention, to establish a record, and to prove the utility of the device. The device was sufficient to show something of the nature of the invention, to establish at least a conception, but of itself, and without thorough tests, was not sufficient to prove either the utility or practicability of the invention.

The invention undoubtedly belongs to that class which requires either actual use or thorough tests to demonstrate its practicability, and therefore there can be no actual reduction to practice until one or the other thing takes place and is proven. Both parties in effect admit this necessity, for they both subjected their devices to certain tests. It is unnecessary to

determine whether Hien's tests were sufficient, for his constructive reduction to practice preceded any claimed actual reduction. However, it may be said that his tests went far beyond any made by Gallagher. As to the necessity for thorough tests in this case, our views are confirmed by the testimony of Mr. Dennis, a witness called by Gallagher. He characterizes the invention as "a radical departure from the previous methods." Gallagher thus describes the tests made by him. He says the device was first put in a vise, and subjected to pressure. What that pressure was he does not state, nor does he state any facts which enable us to determine whether he was justified in his conclusion that the result of the test was satisfactory. No one seems to have been present at this test, and, in our opinion, it proves nothing. Thereafter he took the device to Bridgeport, where some slight changes were made, and the springs tempered. The device was then put in a vise, and then on the anvil of a strong and powerful steam-hammer, the rings being held in place by a pair of blacksmith's tongs held by Mr. Wilder. After being, as he says, repeatedly struck with the hammer, they were broken by a hard blow. The pieces were put in a package, taken to New York, and laid away for future use. They do not seem to have been used for any purpose after that until they appear in these proceedings. Mr. Wilder, who assisted Gallagher in the test at Bridgeport, says that, not having a power-press, the device was put in the vise and squeezed, and found to work as a spring, but the power of the vise was not great enough to close the spring. He goes on to say: "We put it under our steam-hammer and hit it a light blow which showed its action, but in giving it a little too hard a blow it broke." He expresses no opinion as to what the test demonstrated, or proved, if anything, nor does he give any data from which we can draw the conclusion that the test proved anything of value. The tests, in our opinion were inconclusive and insufficient upon which to predicate a finding that they proved the practicability of the invention. It will be noted, as stated by the Acting Commissioner "that no measurements were taken to show the tensile strength or the pressure to which the springs were subjected." We are confirmed in our

belief that the device, tested as it was, still remained in the domain of experiments, by the testimony of Mr. Dennis, one of the officers of the Standard Coupler Company. He evidently did not consider that the experimental stage had been passed. Speaking of his faith in the invention, he says that he thought it "worth experimenting with," that "there was enough in the idea to warrant experiments," and as late as June, 1902, he says he stated to Mr. Sessions, "I thought there was enough in the idea to warrant some experiments."

We find that Gallagher was the first to conceive, disclose, and make an experimental device, which was tested experimentally, but that he was the last to reduce the invention to practice, and he failed to exercise ordinary diligence in connecting his earlier conception with his later reduction. He has failed to overcome the presumption that Hien is the first inventor, arising out of his being the earliest to apply for a patent.

We think the Acting Commissioner of Patents was right in his judgment, and that it should be affirmed.

The clerk of the court will certify this opinion, and the proceedings in this court in the premises, to the Commissioner of Patents according to law.                    *Affirmed.*