# POOL *v.* DUNN.

PATENTS; INTERFERENCE; APPEALS; DILIGENCE; REDUCTION TO PRACTICE.

1. Where it appears that the application of one of the parties to an inter- ference was pending when a patent was issued to the other party, no additional burden is cast upon him by reason of the outstanding patent.

2. Where the senior party to an interference was the first to conceive the invention, he must prevail, provided he was exercising due diligence in reducing his invention to practice, or unless his reduction to prac- tice antedates that of the junior party, when the question of diligence becomes immaterial.

3. In order that a device may be a reduction to practice, it is necessary in every case, except that of a very simple device, that it be tested. A scale of the pendulum pattern *held* to be a device requiring a test to show its accuracy.

4. Where, in an interference involving the invention of a scale of the pendulum pattern, the question was whether the device made by the junior party had been reduced to practice by being tested prior to the date of the senior party's reduction to practice, and it appeared that a test was made prior to that date, but thereafter, according to the junior party's own statement, many changes and improvements were made in the device, and it then failed to respond to tests ap- plied, it was *held* that reduction to practice as to such prior date had not been established.

5. The test of a device necessary to show reduction to practice should be such as to show that the device reasonably meets the requirements of the specifications, or that it may be made to do so by the introduc- tion of mere mechanical changes; but the device relied upon must be shown to be in the same condition as it was when tested.

No. 581. Patent Appeals. Submitted November 10, 1909. Decided Novem- ber 30, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Frank Parker Davis* and *Messrs. Rector, Hibben, and Davis* for the appellant.

*Mr. V. H. Lockwood* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents affirming the decision of the Board of Examiners-in-Chief, which, in turn, affirmed the decision of the Examiner of Interferences, awarding priority of invention to appellee, Frank P. Dunn, on the ground that appellant, Elmer C. Pool, did not establish conception and reduction to practice of his invention prior to appellee. The invention in issue consists of a scale of the pendulum pattern. The issue of the interference is set forth in eight counts, two of which sufficiently illustrate the invention and will serve the purpose so far as this inquiry is concerned. The counts are as follows:

"1. In a scale, the combination with a pivoted beam adapted to receive a load on one end, and having a normally weighted opposite end to oppose an applied load, of a counter-balance normally in raised position, a connection between said counterbalance and the scale beam whereby said counterbalance will act until equilibrium upon the scale beam in the direction of applied load with a variable force as the counterbalance approaches or recedes from its normal position; and means for indicating the position of equilibrium of the scale beam under an applied load, whereby the effect of such applied load is indicated."

"8. In a scale, the combination with a pivoted beam adapted to receive a load on one end, and having a normally weighted opposite end to oppose an applied load, of a rotative indicator support, an indicator, a scale traversed by said indicator, a connection between the indicator support and the scale beam, a counterweight arm carried by said indicator support in a normally raised position, a counterweight on said arm to act upon the scale beam in the direction of the applied load, and means

connected to said scale connected to one of the movable parts of said structure to regulate the vibration of the beam."

Appellee filed his application November 19, 1906, on which a patent was issued June 11, 1907. Appellant filed his application February 7, 1907. Inasmuch as appellant's application was pending at the time the patent issued to appellee, no additional burden is cast upon the appellant by reason of this outstanding patent. The whole case turned in the tribunals of the Patent Office upon the date of reduction to practice. These tribunals all established the summer of 1906 as the date of appellee's reduction to practice. Appellant claims actual reduction to practice in the fall of 1905.

From a careful review of the evidence, we are satisfied that appellee is not entitled to an earlier date for reduction to practice than that given him by the tribunals of the Patent Office, —July 31, 1906. We are also inclined to accord him the dates there found for conception, to wit: For counts 1 to 7, June 30, 1904; and for count 8, October 31, 1904. These dates for conception of the invention in issue by appellee antecede the earliest date claimed by appellant. We can, therefore, pass the further consideration of the evidence establishing the dates of conception, awarding to appellee priority on this branch of the case. This being so, appellee must prevail; provided he was exercising due diligence in reducing his invention to practice, or unless his reduction to practice antedates that of the appellant's, when the question of diligence becomes immaterial. The case therefore narrows itself to the following questions of fact: First, whether appellant's date of reduction to practice is prior to that of appellee; and, second, if so, whether or not appellee first conceived the invention in issue, and exercised due diligence in making a reduction to practice. We agree with the Examiner of Interferences that, "in order that a device may be a reduction to practice, it is necessary in every case, except that of a very simple device, that it be tested. A scale such as that in controversy is considered to be a device requiring a test to show its accuracy."

The first consideration is to ascertain the date of appellant's

reduction to practice. The earliest date necessary to consider in this connection is November 25, 1905, when one De Vilbiss, an agent of the Computing Scale Company, of Toledo, Ohio, visited appellant's place in Newcastle, Pennsylvania, and saw a device which he attempts to identify as appellant's Exhibit O, the scale involved in this issue. This witness states that he examined the device at night, by lamplight, the examination lasting from fifteen to thirty minutes. He tested the scale by the use of pound and half-pound weights, and the scale worked well under this test. He, however, did not repeat the tests to ascertain whether it would always indicate the same with the same weights, nor did he test the scale to ounces. Speaking of this test, the witness said: "I tested the scale with the weights, and was surprised at the accurate manner that the scale operated, considering the apparently crude manner in which it was constructed. I placed small coins on the scale, and it was very sensitive."

It appears, however, that the scale De Vilbiss saw was not the same scale in all particulars as the one here shown as Exhibit O. Several important changes were made by appellant after the visit of De Vilbiss on November 25, 1905. On this point, appellant wrote to De Vilbiss a letter dated March 19, 1906, in which he states: "Owing to illness and press of other matters I have been unable to get it in anything like a complete condition until this time. Since you were here I have made numerous changes and improvements, and have changed the design, as you will notice by the small photo which I am mailing under separate cover. * * * I would be glad to have you call and let me show it to you as it is now constructed, with changes and improvements that I have made, I must say it works *fine*. * * * It is hardly possible to go into the details of the improvements made in this letter." De Vilbiss is not positively clear as to just what he saw at appellant's place on November 25, 1905; and, even were we satisfied that what De Vilbiss saw worked sufficiently well to establish a reduction to practice, it by no means follows that it would work. equally well after appellee made the "numerous changes and improve-

ments" referred to in his letter. Hence, we have appellant's uncorroborated evidence as to what changes he made, and the result of the tests after those changes were made. This seems to us to be the turning point in appellant's case.

The scale was afterwards shipped to the works of the Computing Scale Company, at Toledo, Ohio, and later to its attorney at Chicago, Illinois, but no test of the device was made by any of these parties. True, it is shown that in shipment to Toledo a small steel band, called the torsion strap, was broken. No effort was made there to replace it, but the scale was returned to appellant for repairs. Appellant replaced the torsion strap, and made some other changes, and it was then shipped to Chicago. In the absence of any test being made of the completed device, prior to the date of appellee's reduction to practice, other than that testified to by appellant alone, coupled with its failure to respond to the tests applied when the evidence was taken, leads us to concur in the conclusion of the Commissioner of Patents where he says: "The scale was tested by both Pool and De Vilbiss during the taking of their testimony. The action of the scale was erratic, and the explanation given therefor is that the disk over which the band supporting the weight passes had not been changed after the new band was put in, and that the scale had not been otherwise properly adjusted to the new parts. There is no testimony but that of Pool as to any tests of the scale between November 25, 1905, and the time the testimony was taken. As pointed out above, De Vilbiss did not repeat his tests, and did not test the scale to ounces. In view of the general character of his testimony, of the fact that the scale was never tested by the Toledo Computing Scale Company, the owner of the invention, when it was in its shops, and of the fact that the criticisms of De Vilbiss as to the use of the torsion strap were apparently justified by the fact that it broke twice in transit, it must be held that Pool has failed to establish a reduction to practice of the invention in November, 1905. It is also to be noted in this connection that while both Pool and De Vilbiss say the scale which the latter saw on November 25, 1905, was substantially the same as 'Pool's Exhibit O,' Pool in his letters

to De Vilbiss, which are in evidence, and which were written after the scale was changed to its present form, speaks of having made many changes and improvements in his scale."

It is not necessary, in order to establish reduction to practice, that the test should be one of complete accuracy. It is seldom that an inventor reaches perfection in the first device constructed. The test should be to ascertain whether the device reasonably meets the requirements of the specifications, and, if it does not measure up to this test, Can it be made to meet it by the introduction of mere mechanical changes? If it can, it should be regarded as a reduction to practice. In this condition it demonstrates the ability of the inventor to display the thing of which he has a conception in such a manner that those skilled in the particular art may understand the novelty therein embraced. It is, however, essential that the device relied upon shall be clearly shown to be not only the same device as the one tested, but it must be in the same condition it was in when the test was made upon which reduction to practice is sought to be established. With the burden resting upon the appellant, we are not able to say that the test made on November 25, 1905, taken in connection with the subsequent action of appellant in changing the device, meets the requirements of the law in establishing reduction to practice.

In this view of the evidence, it becomes unnecessary to consider the question of diligence on the part of appellee. Appellant has not placed himself in a position to challenge appellee's right to a patent on this ground. For the above reasons, the decision of the Commissioner of Patents is affirmed, and the clerk will certify these proceedings as by law required.

*Affirmed.*


On January 5, 1910, a petition by the appellant for a rehearing was denied.