**BOUCHER INVENTIONS, Limited, et al. v. SOLA ELECTRIC CO. et al.**

**No. 7827.**

United States Court of Appeals for the District of Columbia.

Decided June 30, 1942.

STEPHENS, Associate Justice, dissenting.

Mr. Herbert S. Ward, with whom Messrs. John Howard Joynt and Scott D. Kellogg were on the brief, all of Washington, D. C., for appellants.

Mr. Leslie W. Fricke, of Chicago, Ill., with whom Mr. Nelson J. Jewett, of Washington, D. C., was on the brief, for appellees.

Before STEPHENS, VINSON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The suit is to obtain letters patent, filed by Boucher[1] pursuant to Rev.Stat. § 4915 (1878), 35 U.S.C. 63 (1934). The question is one of priority, which in turn rests on reduction to practice.

The invention eliminates the danger of burning out from short circuits in the secondary coils of transformers used in lighting electric neon lights or neon tubes. Sola conceived it early in 1933. His application was filed August 27, 1935, Boucher's on September 20, 1935. The Commissioner of Patents declared an interference between Boucher as junior and

[1] The corporate parties, plaintiff and defendant, assignees of the respective individual claimants to invention, are designated with their assignors, respectively, by the latters' names.

Sola as senior party. The Patent Office found in Sola's favor and issued a patent to him. The District Court also decided for him. Its findings and conclusions are reported in 1940, 35 F.Supp. 504. The chief issue here is whether the evidence sustains the finding that Sola reduced his invention to practice before Boucher did. We think it does, and the judgment should be affirmed.

It is admitted that Sola was prior in conception. In 1933 he built two models, Exhibits 5 and 17. He claims that these were sufficient to reduce the invention to practice. Plaintiff says they were insufficient. Sola apparently did nothing further until August 27, 1935, when he filed his application. Boucher claims he conceived and reduced the invention to practice in May and June of 1935. To sustain the claim he relies upon his Exhibits B and AR. The former was in evidence before the Patent Office, but was never tested, apparently because it was never insulated properly to avoid danger from testing.[2] Exhibit AR was not in evidence before the Patent Office, but was received in the trial court. It was tested both in plaintiff's laboratory and in that of Underwriters' Laboratories. There was some evidence of commercial use. Exhibits B and AR were constructed in May and June, 1935, and the latter was tested in June or early July of that year.

Boucher's burden was to show two things: first, that Sola's reduction to practice was not sufficient; second, that his own was successful. We consider first the evidence relating to Sola's exhibits. It is hardly necessary to note that reduction to practice does not require commercial success or usage.[3] We think the evidence clearly shows that Sola's models (Exhibits 5 and 17) work, and worked when they were made in 1933.

Two tests, or series of laboratory tests, were made, one in 1933, one during the trial at plaintiff's insistence. Taken together, the results of the two tests or series demonstate workability beyond question. In the 1933 tests, the models were hooked up with neon tubes, which they lighted successfully, and were operated for fifteen minutes. The models did not burn out. Plaintiff says this length of time was not sufficient to show they would not burn out under conditions of practical operation. It is said several hours, perhaps even days, of continuous operation would be required to demonstrate that they would withstand short circuiting.

We need not determine whether such a degree of perfection would be required,[4] or whether the evidence concerning the 1933 tests, standing alone, would be sufficient. It does not stand alone. During the trial plaintiff demanded that Exhibit 5 be subjected to further tests of several hours' continuous operation. Plaintiff was confident, apparently, that the model would not withstand the test. Defendant was reluctant to comply, because the model was then several years old and counsel feared the factor of age and deterioration might affect the operation adversely. But defendant met the challenge when plaintiff repeated it insistently.

The test was run for full six hours, during an afternoon when the court was not in session, in accordance with the agreement for submitting to it. Plaintiff and his attorneys were present. The verdict of the test was against them. But they did not accept it. Instead, they insisted the test continue all night. Defendant's attorney declined on the grounds this was unreasonable and the agreement had been complied with fully. At the oral argument plaintiff's attorney conceded if the test made during the trial had been made in 1933, "I would not be in this court now."

---

2 There is some evidence of operation in the record, including demonstration when not fully loaded. But at the oral argument it was admitted this exhibit had never been tested, for the reason stated.

3 Hildreth v. Mastoras, 1921, 257 U.S. 27, 34, 42 S.Ct. 20, 66 L.Ed. 112; Winkley v. Cogswell, 1927, 57 App.D.C. 206, 19 F.2d 680; Berry v. Bohn Aluminum & Brass Corp., D.C.E.D.Mich.1939, 29 F.Supp. 516, 521; cf. Downs v. Andrews, 1928, 58 App.D.C. 91, 25 F.2d 218; Westinghouse Electric & Mfg. Co. v. Wadsworth Electric Mfg. Co., 6 Cir., 1931, 51 F.2d 447, certiorari denied, 1931, 284 U.S. 650, 52 S.Ct. 30, 76 L.Ed. 552.

4 Cf. Corona Cord Tire Co. v. Dovan Chemical Corp., 1928, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Leichsenring v. Freeman, Cust. & Pat.App.1939, 103 F.2d 378; Harlan v. Bregman, Cust. & Pat.App.1930, 39 F.2d 494; Goodwin Film & Camera Co. v. Eastman Kodak Co., D.C.W.D.N.Y.1913, 207 F. 351, affirmed, 2 Cir., 1914, 213 F. 231.

The position is taken that this test cannot relate back to the date of the laboratory tests in 1933 to show that the invention was then reduced to practice.

Whatever might be true under other circumstances, plaintiff is in no situation to urge this position after demanding and insisting upon the test, and then insisting it continue beyond the agreed time, when the result was not to his liking. Had the result been the contrary one, it may be assumed without violence to the facts in this case that plaintiff's position would be equally insistent that the test during trial be taken as evidence that the invention was not reduced to practice in 1933. Having demanded the test, insisted upon it, received compliance at grave risk to the opposing party, and having no reasonable basis for questioning the sufficiency of the test or that the models were in the identical condition they had in 1933, plaintiff must accept the consequences. In the absence of any evidence of alteration or tampering, the test during trial showed that the identical exhibits with which the 1933 tests were made worked in 1940, though then several years old, and the clear inference is that they were workable and the invention had been reduced to practice in 1933.

This is sufficient to dispose of the appeal. But we may point out that Boucher's action in resting his case before the Patent Office on his untested Exhibit B, withholding the tested Exhibit AR until the trial in the District Court, would raise serious question whether, in the peculiar circumstances, the latter should have been received in evidence, and therefore whether there was sufficient evidence, apart from that relating to Exhibit AR, to sustain a finding that Boucher had reduced the invention to practice before Sola's application was filed. Again at the oral argument the only explanation which was offered for this unusual conduct was that counsel appearing here had not acted before the Patent Office, and his associate who presented the matter there may have failed to submit the tested exhibit through oversight or inadvertence. The explanation is not convincing. Boucher's invention and reduction to practice rested on two, and only two, exhibits. One was B, never tested, and therefore no evidence of workability. The other was AR, tested and, it may be assumed, shown by the test to be fully workable. If only one model was to be presented, the clearly indicated and only sufficient one for the purpose was the model kept without the Patent Office's purview. It seems impossible that an exhibit of such importance could have been overlooked or left out by inadvertence.

The practice, under Section 4915 as well as within the Patent Office itself, contemplates a full disclosure to that office, so far as is reasonably possible, particularly in relation to models, exhibits, drawings, etc. While the 4915 suit is de novo and permits introduction of evidence not presented to the Patent Office, it does not contemplate the suppression or the withholding of evidence so readily available and of such importance as was Exhibit AR or oversight of such glaring proportions.[5] We have added these views, first, to indicate that if the evidence concerning Sola's reduction to practice were less conclusive than it is, still there would be serious question whether the record contains admissible evidence to show that Boucher reduced the invention to practice prior to the filing of Sola's application. We have added them also, though not strictly necessary for decision of the cause, to avoid by admonition, if possible, the necessity for making decision on such a ground in another case, in which the consequences might be more serious.

Other questions presented are not of sufficient importance to require statement or consideration in the opinion. The evidence is clearly sufficient to sustain the findings, and the judgment is affirmed.

STEPHENS, *Associate Justice*, dissenting.

I think this case should be remanded for further findings. The pertinent dates are as follows:[1] Sola's conception was in

5 Greene v. Beidler, 2 Cir., 1932, 58 F.2d 207, 209; Barrett Co. v. Koppers Co., 3 Cir., 1927, 22 F.2d 395, 397; O'Donnell v. United Shoe Machinery Corp., D.C.Mass.1933, 2 F.Supp. 178, 181; cf. Perkins v. Lawrence Sperry Aircraft Co., D.C.E.D.N.Y.1932, 57 F.2d 719, 720; Dowling v. Jones, 2 Cir., 1933, 67 F.2d 537, 538; Wright v. Runge, D.C.D.C.1939, 31 F.Supp. 844.

1 There was no finding on the subject of conception and none on the subject of Boucher's reduction to practice. I take the dates on these topics from the evidence.

January, 1933; Sola's alleged reduction to practice was February 1, 1933; Boucher's conception was in March or April, 1935. Boucher's alleged reduction to practice was in March or April, 1935 (in respect of Exhibit B), June or July, 1935 (in respect of Exhibit AR); Sola's filing date (constructive reduction to practice) was August 27, 1935; Boucher's filing date (constructive reduction to practice) was September 20, 1935.

The finding below was in favor of Sola on the ground that he alone had made an actual reduction to practice. I think this finding was not warranted by the evidence. The essential purpose of the invention in question is that of preventing burning out of the secondary coils of a transformer as the result of the increased current which is occasioned by the lowered resistance which follows upon a short circuit. Sola's asserted reduction to practice is based upon tests of Exhibits 5 and 17 in 1933. The test of Exhibit 5 is shown, so far as the results are concerned, in Exhibit 6, a penciled tabulation. What this shows, so far as it relates to the secondary coils, is merely this: When both secondary coils were short circuited, current flowed through them at a rate of 27.7 milliamperes. When the secondary coils were connected to neon tubes of varying lengths (ranging from 5 to 55 feet) current flowed through the secondary coils at rates varying from 27.4 milliamperes (when the coils were connected to a 5 foot tube) to 20.5 milliamperes (when the coils were connected to a 55 foot tube). When one of the secondary coils was short circuited—the other being left in open circuit—the current flowed through it at a rate of 40.5 milliamperes; when the other secondary coil was short circuited—the one previously short circuited being left in open circuit—current flowed through it at a rate of 41.0 milliamperes. The testimony of Sola's own witnesses is that it took but fifteen minutes to make the test recorded in Exhibit 6. That being true, the trials made on the secondary coils while one was short circuited and the other in open circuit could have occupied only a small portion of the fifteen minutes. Obviously, therefore, there could have been in this test no demonstration of the success of Sola's device so far as its essential purpose of preventing burning out is concerned. Sola's witness Dickson testified:

"X-Q. 33. Would you consider a short circuit current in one coil, amounting, say, to 41 milliamperes, a safe current—that is, safe from the standpoint of the life of the coil? A. That would have to be checked. The units which are now in production have been tested, referring to Exhibit 27, have been tested and are safe. However, Exhibit 5 was merely a test to see whether the principle, not the transformer, in question, was any good."

The record shows that the test of Exhibit 17, the results of which are shown in the penciled tabulation Exhibit 18, was not made for the purpose of demonstrating how the model would function on short circuiting of one of the secondary coils. This test was run in the large for the purpose of checking on the cost of production. The 1933 tests, taken alone, therefore fail to show reduction to practice.

The majority take the view that the 1933 tests may, however, be validated by considering them in connection with the test made of Exhibit 5 at the time of the trial in 1940. The record shows that Exhibit 5 was run through a six-hour test during a recess of court and that it operated successfully in the sense that, although a short circuit was deliberately developed at the outset, the transformer did not burn out. But however successful the test made at the time of the trial may be said to have been, it is in my opinion erroneous to permit this test to apply *nunc pro tunc* so as to validate the insufficient tests of 1933. The question involved in an issue of reduction to practice is not whether an invention would theoretically work but whether it actually did operate successfully.[2] Mason v. Hepburn, 1898, 13 App.D.C. 86; Hunter v. Stikeman, 1898, 13 App.D.C. 214; Paul v. Hess, 1905, 24 App.D.C. 462; Gallagher v. Hien, 1905, 25 App.D.C. 77, 68 L.R.A. 272; O'Connell v. Schmidt, 1906, 27 App. D.C. 77; Wickers v. McKee, 1907, 29 App.D.C. 4; Sydeman v. Thoma, 1909, 32 App.D.C. 362; Pool v. Dunn, 1909, 34 App.D.C. 132; Henderson v. Gilpin, 1912, 39 App.D.C. 428; Malcolm v. Richards, 1918, 47 App.D.C. 582. The following quotation from Henderson v. Gilpin, supra, reflects the law expressed in these cases:

2 There is an exception not applicable here in the case of very simple machines whose mere construction is accepted by the patent law as a demonstration of workability.

"... It is not enough... that these ... tests indicated that the operation of the device would be successful. To constitute reduction to practice, a test must amount to a demonstration in fact, as contradistinguished from one in theory." [39 App.D.C. at page 431]

As I have indicated above the defect in the 1933 tests was that Exhibit 5 was not operated for a long enough time to demonstrate that it actually functioned to prevent burning out of the transformer when short circuiting occurred in the secondary coils. The fact that the test at the time of the trial in 1940 did demonstrate that Exhibit 5 operated successfully to this end is no evidence that it operated successfully to the same end in 1933. It is only evidence that if the 1933 test had been carried on for an extended period it probably would have demonstrated the same successful operation as was shown in 1940. See the following authorities discountenancing an attempt to use a test in respect of reduction to practice *nunc pro tunc*. Smith v. Warnock, 1921, 50 App.D.C. 326, 271 F. 556; Derr v. Gleason, 1919, 49 App.D.C. 69, 258 F. 969.

Since the evidence fails to support the finding that Sola made an actual reduction to practice the case should in my opinion be remanded for a finding upon the question whether or not Boucher made an actual reduction to practice and when, and for further evidence on that subject if necessary. If Boucher did make an actual reduction to practice in March or April, 1935 (in respect of Exhibit B), or in June or July, 1935 (in respect of Exhibit AR), he would, in this aspect of the case (aside from a question of diligence to be mentioned below), prevail over Sola whose constructive reduction to practice by filing was not until August 27, 1935. If Boucher did not make an actual reduction to practice then Sola would prevail, in this aspect of the case, by virtue of his prior filing date, Boucher not having filed until September 20, 1935.

If, however, the court should find that Boucher did reduce to practice in March or April or in June or July, 1935, a further issue will then arise which should also be determined and be made the subject of a finding—that is the question of diligence by Sola. For even if Boucher made an actual reduction to practice in March or April or in June or July, 1935, still, since Sola's conception was in January, 1933, and therefore first, Sola would prevail over Boucher if Sola was diligent in the development of his invention from immediately prior to March or April, 1935, that is to say, from immediately prior to whatever is found to be Boucher's conception date, up to the time of Sola's filing on August 27, 1935. The trial court made no finding either on the issue of actual reduction to practice by Boucher or upon the question of diligence by Sola—undoubtedly for the reason that it concluded that Sola had reduced to practice.

I disagree with that part of the majority opinion which implies, although it does not conclusively rule, that the trial court ought not have permitted Boucher to introduce at the trial evidence of the test of Exhibit AR for the reason that such evidence was not introduced in the interference proceeding in the Patent Office. I think this implication of error not supportable. At the trial Boucher explained that the reason he did not introduce this evidence in the Patent Office proceeding was that he did not at that time realize the value of proving in an interference proceeding that his invention had been completely finished and embodied in commercial form. The trial judge apparently accepted this explanation as true. He ruled that in view of the fact that Boucher had not omitted to introduce the evidence in the Patent Office proceeding with an intention of concealment the evidence was properly admissible at the trial. The judge relied upon a former decision of his own in Wright v. Runge, D.C., 1939, 31 F.Supp. 844. I think the judge's ruling was correct. Proceedings under Rev.Stat. § 4915 are de novo; that is, that section gives the parties a right to introduce evidence other than that which was introduced in the Patent Office proceedings. The cases relied upon by Sola as requiring the exclusion of the evidence in question spring from the case of Barrett Co. v. Koppers Co., 3 Cir., 1927, 22 F.2d 395. In that case the party plaintiff in a § 4915 proceeding had refused to allow his witness to testify in the Patent Office to certain matters relevant to an issue of priority. He sought to introduce the testimony of these witnesses on these same matters in the § 4915 suit but was forbidden to do so. On appeal that exclusion was sustained. The Circuit Court of Appeals held that, in view of the suppression of the evidence in question in the Patent Office proceeding, to allow its in-

troduction in the § 4915 proceeding would be to permit the party offering the evidence to profit by its own "technical wrong-doing." It is evident that the decision was reached upon a theory of estoppel, or of quasi-estoppel, which the court based upon the losing party's intentional wrong-doing. In Dowling v. Jones, 2 Cir., 1933, 67 F.2d 537, 538. Judge Learned Hand in a dictum had the following to say about this case:

". . . In Barrett Co. v. Koppers [Co.] . . . The Third Circuit refused to consider evidence which the inventor had deliberately suppressed in the interference, and used broader language than the exact situation required, which we quoted with approval in Greene v. Beidler [2 Cir.], 58 F.(2d) 207, 209, 210. However, it does not follow that it would have extended the doctrine to evidence not suppressed, but merely neglected through the plaintiff's slackness in preparation. Perkins v. Lawrence Sperry Aircraft Co. (D.C.) 57 F.(2d) 719, 720, did so extend it, but we need not approve. The question is doubtful and we prefer to leave it open, for it is not necessary to answer it here." [67 F.2d at page 538]

In Wright v. Runge, cited above, the trial judge, after pointing out that the plaintiff in that case had not deliberately suppressed evidence, said:

"It may well be that the plaintiff might be estopped from offering testimony here that he had suppressed in the Patent Office, but the mere failure to exercise the highest degree of diligence in producing evidence before the Patent Office would not, in my opinion, prevent its introduction here.

"While it might have been possible in the instant case for the plaintiff to have procured some of the evidence introduced here before the Patent Office, I do not think that his failure to do so estopped him from offering it here. There is no showing that the defendant was surprised as to its introduction, nor that he could produce evidence to overcome its effect." [31 F.Supp. at page 845]

I think the decision in Wright v. Runge was correct and that we cannot say in the instant case that the trial judge ought not have believed Boucher's explanation of his omission to introduce the evidence in question in the Patent Office proceeding.