## DOWLING et al. v. JONES.
### No. 48.

Circuit Court of Appeals, Second Circuit.

Nov. 13, 1933.

538

Samuel E. Darby, Jr., of New York City (Darby & Darby and Samuel E. Darby, all of New York City, of counsel), for appellant.

Duell, Dunn & Anderson, of New York City (R. Clyde Cruit, of Washington, D. C., and Robert E. Kanode, of Baltimore, Md., of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is a suit under R. S. § 4915 (35 US CA § 63), to "authorize" the Commissioner of Patents to issue a patent to the plaintiffs, assignees of one Mas, for a design to be used upon bottles. The facts are very fully stated in the opinion below, and we need not repeat them here. Mas's earlier conception is, as we understand it, conceded; at any rate it was proved beyond any possible doubt to go back of 1924, and the Patent Office so found. Two quite independent questions thereupon arise: First, whether Mas reduced his invention "to practice" with reasonable diligence; second, if not, whether he has shown that Jones took his commercial bottle and his own design patent from prints or models which Mas sent him. As we hold that Mas has succeeded on the second point, we pass the first. We assume arguendo that Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, applies equally to the situation after, as before, the amendment of 1927 to R. S. § 4915, and section 4911 (sections 8 and 11 of the Act of March 2, 1927, 44 Stat. 1336 [35 USCA §§ 59a, 63]), and we decide the appeal on the assumption that the findings of the Patent Office must prevail unless we cannot avoid an opposite conclusion.

Jones argues that the plaintiffs were limited to Mas's case as made before the examiner, and that we should disregard the evidence first taken in the District Court. His notion is that as such a suit as this is in effect a new trial, a plaintiff is compelled to show that his new evidence was not available in the interference proceedings by the use of reasonable diligence; the same doctrine that applies to ordinary actions or suits. The statute itself gives the parties the right to bring in other evidence; the suit is an alternative to an appeal to the Court of Customs and Patent Appeals, which is upon the old record. Nevertheless, evidence, originally competent, might still be inadmissible if available at the interference; there is something to be said for the analogy, for instance, of the right to bring in new evidence on appeals in the admiralty, which is circumscribed by the rule of due diligence. In Barrett Co. v. Koppers (C. C. A.) 22 F.(2d) 395, the Third Circuit refused to consider evidence which the inventor had deliberately suppressed in the interference, and used broader language than the exact situation required, which we quoted with approval in Greene v. Beidler, 58 F.(2d) 207, 209, 210. However, it does not follow that it would have extended the doctrine to evidence not suppressed, but merely neglected through the plaintiff's slackness in preparation. Perkins v. Lawrence Sperry Aircraft Co. (D. C.) 57 F.(2d) 719, 720, did so extend it, but we need not approve. The question is doubtful and we prefer to leave it open, for it is not necessary to answer it here.

All the new evidence was taken upon deposition de bene esse at places remote from New York, and long before the trial. Under the doctrine in this circuit it may be that Jones could not have moved to suppress the notices to take the depositions (Section 639, title 28, U. S. Code [28 USCA § 639]). Henning v. Boyle (C. C.) 112 F. 397; Kline Bros. & Co. v. Liverpool, etc., Co. (C. C.) 184 F. 969; In re National Equipment Co., 195 F. 488, 489 (C. C. A. 2); Nieman v. Plough Chemical Co., 22 F.(2d) 73, note 2, page 74 (C. C. A. 6). But he could have raised the question while they were being taken, and certainly when they were read in evidence at the trial. He did not do so at either time, but reserved the point until the argument before the judge, after the case was closed. Indeed, he does not even assign it as error in this court. We cannot say what ex-

cuse the plaintiffs may have had for failing to produce the new evidence at the interference; they were deprived of any opportunity to show it. We hold that if the point be a good one at all, the plaintiff must be advised of it in season and allowed to present his excuse. The judge was therefore right in considering all the evidence.

■■ On the merits we start with the extreme unlikelihood that two persons should independently have contrived designs so similar as Jones's commercial bottle and Mas's zinc plate. In outline the bottles are almost facsimiles. The exterior of each is a double curve; the proportion of height to width at the bottom and at the mid bulge, though not exactly the same, is very close. Three bands of plain glass appear in each at the same places; one at the waist, another at the shoulder, a third at the neck. This correspondence would alone be very striking, but the texture, or surface design, of the two is exactly the same; each has a "hair-net" pattern over the whole surface, except at the bands just mentioned; within each lozenge of the net, Mas put a hair line, which Jones's bottle, though not his patent, reproduces. The step by step similarity is exceedingly persuasive of a single source. Orange-Crush Co. v. American, etc., Co., 60 F.(2d) 518, 520 (C. C. A. 4). But the evidence does not stop there. In the interference proceedings Mas swore that on October 14, 1924, over a year before the earliest date at which Jones said that he had conceived his invention, Mas posted a letter to him, containing several small cuts of various designs, among them that in suit. He sought to corroborate his story by that of two witnesses, with whose testimony the examiner was not impressed. Jones did not, and said he could not, find the letter in his files; though he produced one from Mas, dated August 21, 1924, the offer in which he refused. His denial of the receipt of the others, of which Mas produced supposed copies, coupled with Mas's unsatisfactory proof of posting, controlled the result in the Office. In the depositions upon the trial Mas, among other things, mended his proof of posting the letter of October 14, 1924. One witness, Cotton, a wood designer, swore that in the spring of 1925, Mas employed him to make a wooden model of the "hair-net" design to be sent to Jones in the hope that, thus seen in the round, it might better persuade him to buy. Cotton produced the original of a letter from Mas to him, dated "May–1925," a part of which reads as follows: "I am enclosing letter from Whistle Company of America of New York City. You will see for yourself that they seem interested in my design, women's hair net design. Last year in October, I sent them a small drawing. I believe on account of this drawing being so small, they could not see what the design looked like, so please make me a wooden model to send to them." There is not the slightest ground for suspecting the truth of Cotton's testimony, or that in May of 1925 Mas was already engaged in fabricating a case. Although the letter is an unsworn declaration of Mas, it was admitted without objection, or limitation, and even if it was incompetent, once before the court it was evidence like any other probative fact. Schlemmer v. Buffalo, etc., Ry., 205 U. S. 1, 9, 27 S. Ct. 407, 51 L. Ed. 681; Diaz v. U. S., 223 U. S. 442, 450, 32 S. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; Rowland v. Boyle, 244 U. S. 106, 108, 37 S. Ct. 577, 61 L. Ed. 1022; Spiller v. Atchison, etc., Ry., 253 U. S. 117, 130, 40 S. Ct. 466, 64 L. Ed. 810. We do not mean to suggest that it was not competent; as a corroborative declaration ante litem motam, of a witness, the veracity of whose story upon the stand is challenged, it may well have been admissible anyway; but with that we are not concerned. Probative beyond shadow of question it is, and it serves to lay any doubts that the letter of October fourteenth and the "hair-net" design were posted to Jones before he conceived his supposed invention. To be sure he may not have received them, though he did get the letter of August 21, 1924. But their receipt is in the first place probable, because the mails usually carry. Again, it is hard otherwise to account for the design of Jones's commercial bottle, as we have said. Finally, a similar coincidence relating to another patent design much fortifies the conclusion. In 1923 Mas had taken out a design patent for a bottle which had a twisted surface; in outline it was quite different from the design in suit. The letter of October 14, 1924, mentioned a number of cuts as enclosed, and Mas swore that among these was one in outline the same as the design in suit; in surface the same as his patent of 1923. The letter of May, 1925, to Cotton, does not speak of this cut; its enclosure in the letter of October 14, 1924, rests upon the testimony of Mas and his witnesses in interference. In 1926 Jones took out a design patent for a bottle precisely like the "twist" bottle which Mas and his witnesses say he sent him along with the "hair-net" cut. Thus it certainly appears that the twisted surface was old and was Mas's; it certainly appears that the shape was Mas's; for it was the same as the shape of the "hair-net" bottle. It also

certainly appears that the combination of shape and surface in the "hair-net" bottle was Mas's and that its design was sent to Jones. It does not certainly appear that Mas had combined both shape and surface of the "twist" bottle and enclosed it with the "hair-net" design. The letter of October fourteenth, unless the copy is fabricated, did enclose several designs, one of them certainly the "hair-net," as we have said, and another some sort of "twist" design. Being corroborated so far, it seems to us that we should accept Mas's testimony that the "twist" design, in fact included, was the same as in the copy produced. If so, Jones has to account for the production of two designs exactly like two enclosed in the letter of October fourteenth. It is much more incredible that he should independently have produced two than one, and the source of the design in suit is proved beyond peradventure to be Mas's. We conclude with the judge that the plaintiffs have proved Jones not to be an original inventor.

■ We should therefore affirm the decree except for a defect in proof of the plaintiffs' title from Mas. He filed an application for a patent on the "hair-net" design on May 17, 1927, to which the plaintiffs sought to prove their title by several mesne assignments. Their only evidence was a certified abstract of records in the Patent Office, purporting to state the contents of papers recorded there. Jones objected to this as incompetent, but the judge overruled him. Before the amendment of 1897 to R. S. § 4898, we had held that even a complete certified copy of an assignment recorded in the Patent Office was not competent to prove title. Mayor, etc., of N. Y. v. American Cable Ry. (C. C. A.) 60 F. 1016. That was in 1894, and the law was changed to make such assignments prima facie evidence when acknowledged before certain officials. Under section 661 of title 28 of the U. S. Code (28 USCA § 661), certified copies from any executive department, under its seal, "shall be admitted in evidence equally with the originals thereof." Thus, if acknowledged before the proper officer the original assignments are now admissible prima facie under R. S. § 4898 (35 USCA § 47), and certified copies of the records are as competent as the originals. But an abstract is not a "copy"; the difference may be material, as it is here, for the abstract does not show that the acknowledgment followed the statute, except in so far as that may be inferred from the fact that the assignments were recorded. Unless so acknowledged not even the originals were competent. Foamite-

Childs Corp. v. Pyrene Mfg. Co. (D. C.) 288 F. 416. The objection was therefore a good one and erroneously overruled; the plaintiffs had not proved their title.

Thus the decree must be reversed and the cause remitted to the District Court for further proof. However, as the other issues have been tried at length, we will send it back only upon that of title. Moreover, the reversal will be without costs, unless the plaintiffs fail in the end. Our mandate will therefore reverse the decree without costs, and remand the suit upon the single issue of the plaintiffs' title, reserving jurisdiction in this court to enter judgment for costs on this appeal, if final decree goes against the plaintiffs.

Decree reversed.