SYRACUSE WASHING MACH. CORPORA-
TION et al. v. VIEAU et al.

No. 339.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1934.

P. Augustus Hopkins, of Syracuse, N. Y.
(Joe Schapiro, of Syracuse, N. Y., of counsel), for appellants.

Hoguet & Neary, of New York City (John F. Neary, Ramsay Hoguet, and Theodore E. Simonton, all of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

As a result of an interference proceeding (No. 54,654) in the Patent Office between Walter A. Papworth, one of the plaintiffs, and Harold F. Vieau, one of the defendants, priority of invention was awarded to Vieau by the Examiner of Interferences, and his decision was affirmed by the Board of Appeals. The losing party did not appeal to the United States Court of Customs and Patent Appeals (35 USCA § 59a), but filed the present bill in equity. The other plaintiff, Syracuse Washing Machine Corporation (whose corporate name is now Easy Washing Machine Corporation) is assignee of Papworth's invention and application for letters patent. The other defendants are Vieau's assignees. The District Court decided that Papworth and not Vieau was the inventor, and that a patent should issue to him. From the decree entered in conformity with this decision, the defendants have appealed.

Before coming to the merits of the appeal, a question of jurisdiction should be considered. The appellants contend that the District Court was without jurisdiction to entertain this suit; that, where there has been a departmental decision in an interference proceeding, the dissatisfied party must appeal to the Court of Customs and Patent Appeals, and only if that appeal is dismissed at the election of the adverse party as provided in section 4911 (35 USCA § 59a) may a bill in equity be filed under section 4915 (35 USCA § 63). In our opinion the contention is without merit. It can scarcely be doubted that the departmental decision awarding priority of invention to Vieau was a refusal of a patent to Papworth within the meaning of section 4915. See Fischer v. Pater, 1928 D. C. 13; McKnight v. Metal Volitilization Co., 128 F. 51, 54 (C. C. E. D. Pa.). He comes literally within the language granting the applicant a remedy by suit in equity "whenever a patent on application is refused by the Commissioner of Patents," unless an appeal has been taken and is pending or has been decided. Prior to the amendment of 1927 it was well settled that a party defeated in interference proceedings could file his bill under section 4915; in fact prior to 1893 that was his only remedy, since he had no appeal. See Smith v. Muller, 75 F. 612, 614 (C. C. Del.); Bernardin v. Northall, 77 F. 849, 850 (C. C. Ind.); McKnight v. Metal Volitilization Co., supra; Dover v. Greenwood, 143 F. 136, 137 (C. C. R. I.). These authorities hold that the

act of 1893 (27 Stat. 434), which granted him an appeal, did not take away his remedy by suit, but merely required him to exhaust his appellate remedy before resorting to his suit in equity. The amendment of 1927 should be construed in the light of this historical background. Section 4911, as amended, still deals with the remedy by appeal. It provides that, if the dissatisfied applicant takes an appeal, he waives his right to proceed under section 4915, and it further provides that the other parties in the interference may at their election cut short the appeal and force him to proceed by suit. But section 4911 is not the source of his right to sue. That is found in section 4915, and the right is granted to any applicant who has been refused a patent, whether in interference or ex parte. The only limitation which the courts have placed on this is that a patentee is not an unsuccessful "applicant," Heidbrink v. McKesson, 53 F.(2d) 321 (C. C. A. 6); MacGregor v. Chesterfield, 31 F. (2d) 791 (D. C. E. D. Mich.), though he may appeal under section 4911, Farmer v. Schweyer, 58 F.(2d) 1056 (Cust. & Pat. App.). Moreover, the repeated references in section 4915 to "adverse parties" and "opposing parties" clearly indicate an intention that the losing party in an interference is to have his remedy by suit, unless an appeal is pending or has been decided. This court so assumed without discussion in Dowling v. Jones, 67 F. (2d) 537 (C. C. A. 2). See also Walther v. Vanderveer, 64 F.(2d) 540, 541 (Cust. & Pat. App.); Nelson v. Berry, 59 F.(2d) 351, 353 (C. C. & P. A.); Fahrenwald v. Cope, 38 F. (2d) 251, 253 (D. C. N. D. Ohio); Greene v. Beidler, 47 F.(2d) 927 (D. C. N. D. N. Y.).

The invention relates to a centrifugally operated apparatus for rinsing and drying clothes. It is well described by the Board of Appeals of the Patent Office in language quoted in the opinion below, and that description need not be repeated here. So far as Vieau was an original inventor, he would succeed over Papworth because of his greater diligence in reduction to practice, as the Patent Office tribunals properly held. The issue is as to Vieau's originality. On that we have a square ruling in his favor by the Examiner of Interferences and the Board of Appeals. We assume, as we did in Dowling v. Jones, 67 F.(2d) 537, 538, that the rule of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657 is applicable to a suit under section 4915 as amended in 1927; and we must therefore accept the departmental ruling unless the opposite is clearly demonstrated. We think it is for reasons now to be stated.

We start with the premise that Papworth's date of conception of the invention was proved to be as early as September, 1924, as the Board of Appeals found, and that Vieau had access to his work. Whether he used it or not is another matter. Parenthetically, mention should be made at this point of the appellants' contention that Papworth's conception did not include the surrounding troughed member and adjustable drain board by means of which the water expelled by centrifugal action from the rinsing and drying receptacle is directed for discharge at any desired point. The Examiner ruled that the application of Papworth and Geldhof filed on January 19, 1926, did not contain the revolvable drain board and that Papworth's claims for this feature must date from the amendment of September 28, 1926. This was an excessively strict and verbal construction, for the original specification described "a branch passage, 23, leading laterally from one side of the trough or conduit, 21, tangential to the corresponding side of the revoluble receptacle, 1, for conducting the water expelled from the clothes by the rotation of the receptacle from the conductor, 21, into the washing vat for re-use, or to any other place desired." The notion that this meant that it must lead only to a fixed location, which might be either the tub or some other place, seems to us quite unsupportable. Papworth's drawings of August, 1924, put beyond doubt that he then had the conception of the revolvable drain board. Indeed, the description of the invention made by the Board of Appeals refers to the surrounding trough provided with a spout which may be directed to discharge the water into either tub of the unit by manually turning the trough. We read its decision as establishing August, 1924, as Papworth's date of conception of the *complete* invention involved in the interference.

Vieau tried to avoid Papworth's date by antedating his own. Had he been content to stick to his filing date of September 5, 1925, and to rest upon his superior diligence, his case might well have been impregnable, but in carrying back his own date of conception he can be shown to have fabricated evidence. That makes it possible to charge him with plagiarism, since he had access to Papworth's work. He relied upon two drawings, his own of October 10, 1923, and O'Neill's of December 14, 1923. Hedglon's testimony adds no support to the first; that rests only on Vieau's word. Still it would be too much to say it was fabricated if it stood alone; it was at worst uncorroborated; it might be either true or false. Papworth would not prove him a

plagiarist by showing merely that his uncorroborated document might be false. But the O'Neill drawing is plainly a forgery in respect to its date. Vieau is now contending that this invention is his alone. That was not his original position; the application of September 5, 1925, was originally filed on the theory that he, O'Neill, and Higby invented it together. The new position was first taken on June 11, 1927. O'Neill testified that he made his sketch from what Vieau had told him, and a day or two later, on December 14, 1923, called in his employees Cool and Schillo to witness it, and then put it away for safekeeping under his tool box where it remained until the spring of 1927. It was plainly made to perpetuate the invention, and must have been made at a time when O'Neill thought he had to prove himself a coinventor with Vieau. On the theory that Vieau was the sole inventor it is incredible that he would not have been called to sign the O'Neill sketch, or, being a draftsman, to make a more skillful one. In the preliminary statement of the joint applicants, Vieau's sketch of October 10, 1923, is relied upon, but no mention is made of O'Neill's. If it then existed, this seems strange, even though the sketch itself had been mislaid. When Vieau made his preliminary statement as sole inventor, again no mention is made of the O'Neill sketch, although the testimony is that it was then in the hands of Vieau's attorney. O'Neill first began any real work on the apparatus in the spring of 1925, long after Papworth's date. On the theory of joint invention it was important that Vieau and O'Neill should each have something to antedate him. The two drawings fit perfectly with this theory, but are wholly inconsistent with the theory of Vieau's single application. That O'Neill's sketch was made later than the date it bears is proven by the fact that he made it on a page from which Brannon's name was stricken out. Brannon was associated with O'Neill in December, 1923, and did not leave until March or April, 1924. The mark over Brannon's name is not a smudge; it is a plain cancellation; it is almost certain proof that when O'Neill made his sketch he took a paper from which Brannon's name had already been stricken or else then drew a line through it without thinking. Coupling this with the fact that the document fits only with the theory of a joint invention and not with invention by Vieau alone makes well-nigh inescapable the inference that the document is a forgery as to its date. All this would not affect Vieau except that he associates himself with the forgery by testimony that O'Neill showed it to him at about the time of its date. As it seems certain that it was not written until later, he is in complicity with O'Neill, and the whole defense is fabricated. With this conclusion almost irresistably to be inferred, the District Court was well justified in believing the testimony of Papworth and his witnesses in preference to that presented on behalf of the defendants. His findings of fact should not be disturbed.

Decree affirmed.