## CLARK v. AMERICAN CYANAMID CO.
### Civ. No. 417.

United States District Court
D. Maine, S. D.

Feb. 21, 1949.

John D. Clifford, Jr., U. S. Atty. and Edward J. Harrigan, Asst. U. S. Atty., both of Portland, Me., for plaintiff.

John F. Dana, of Portland, Me., L. A. Watson, of New York City, and Ellis S. Middleton, of Stamford, Conn., for defendant.

PETERS, District Judge.

This suit was brought under R.S. § 4915, 35 U.S.C.A. § 63, by the Attorney General as successor to the Alien Property Custodian and seeks a decree authorizing the Commissioner to issue a patent for a process of producing acrylonitrile, a plastic useful in the production of synthetic rubber,—among other things.

The factual background and the pertinent proceedings in the Patent Office I find to be as follows:

One Peter Kurtz, a German, on June 29, 1940, filed an application in this country for a patent for the invention of the process referred to. This application became vested in the Alien Property Custodian under the Trading with the Enemy Act, 50 U.S. C.A.Appendix, § 1 et seq. An application for the same invention had been filed in Germany on July 10, 1939, by Kurtz's assignee.

One Ralph Heuser, a citizen of the United States, on October 19, 1940, filed in this country an application for a patent for the same invention which was assigned to the defendant, Heuser's employer. The Patent Office declared an interference between these applications and awarded priority to Heuser, holding that he had invented the process in November, 1939, and that Kurtz had not shown himself entitled to a date of invention earlier than June 29, 1940, the date of his filing in this country.

It is clear that, actually, Kurtz had the prior date of invention and would have, been held entitled to and would have received the benefit of the date of the filing in Germany, under the statute, R.S. § 4887, 35 U.S.C.A. § 32, had his proof of that filing been satisfactory to our Patent Office. Because of the war and the subsequent chaotic conditions, the plaintiff, despite repeated attempts, could not secure from Germany a certified copy of the application filed there and was obliged to rely for proof upon an uncertified copy supplemented by evidence of authenticity. This was held to be insufficient. The same copy certified would have been satisfactory proof. The plaintiff moved to suspend the Interference proceeding until the cessation of hostilities, to enable him to perfect his proof, but the motion was denied.

In the light of the evidence admitted and considered, the Board of Interference Examiners, on April 3, 1946, awarded priority to Heuser and a patent was issued to him. Heuser was dissatisfied with the Board's decision that he had not invented the process in issue prior to November, 1939, and requested reconsideration, on that point, but in a decision rendered on May 10, 1946, the Board adhered to its previous ruling.

It turns out that during all the time the plaintiff was struggling to obtain satisfactory proof of his previous Germany filing (attempts having been made to obtain certified copies of the Germany application through the German, French and Hungarian Patent Offices) there was available to him from the Heuser file,—access to which was permitted in September, 1943,—a printed copy of a Kurtz patent proceeding in Switzerland which contained a copy of the application in Germany of July 10, 1939, as claimed by the plaintiff, and which he was trying to prove. Although the Swiss patent proceeding had been called to the attention of the primary Examiner by Heuser by a letter dated May 27, 1942, the plaintiff was not sufficiently alert to discover its implications till 1946.

On August 20, 1946, the plaintiff, having then succeeded in obtaining a . certified copy of the German application of July 10, 1939, petitioned the Patent Office to reopen the Interference proceeding for the consideration of the newly discovered evidence.

On September 3, 1946, the Commissioner referred the matter to the Board of Interference Examiners with the statement that, "Under the circumstances of this case it is thought that the propriety of reopening should be passed on by the Board of Interference Examiners and jurisdiction is accordingly restored to that tribunal for that purpose."

While the petition to reopen was pending and before decision was rendered, the plaintiff, on October 3, 1946, filed the action in this court, as the six months period during which it could be brought was running out.

On October 12, 1946, Heuser filed a petition in the Patent Office asking that the order of the Commissioner,—restoring jurisdiction to the Interference Examiners for the purpose of considering the petition to reopen,—be vacated on the ground that suit under R.S. § 4915 had been entered in this court.

This petition of Heuser was denied on October 29, 1946, and a hearing had before the Interference Examiners on the plaintiff's petition to reopen the Intereference Proceeding in order to hear new evidence The Board of Interference Examiners filed its decision on December 12, 1946, saying, after a recital of the contentions of the parties and a review of the situation: "The Kurtz petition has been considered carefully but it is not seen that Kurtz makes a sufficient showing of diligence in obtaining a copy of the Swiss certified copy of the

German application to justify a reopening of the interference. The fact that Kurtz has brought an action under R.S. § 4915 in the District Court of Maine has been cited by Heuser as reason for denying a reopening of the Interference in the Patent Office. This fact is believed to afford an additional reason for denying a reopening of this Interference. The extra burden cast on the party Heuser by the necessity of prosecuting an Interference while defending a suit under R.S. § 4915 is readily apparent. Even more persuasive from the viewpoint of the Patent Office is the possibility that the renewed Interference might be nothing more than an idle gesture since the award of priority in any event would be subject to the decision of the District Court arrived before, after, or at the same time as the decision of the Board of Interference Examiners. It is not considered desirable that the Board should reopen cases for the consideration of questions which may be rendered moot at any time by a superior tribunal. In fact the mere availability of a remedy under R.S. § 4915 has been cited as one reason for denying the reopening of an Interference * * *. The party Kurtz has not established the propriety of reopening this Interference to consider the additional testimony. The Kurtz motion for reopening is accordingly denied."

In 1947 the defendant filed a motion to dismiss the complaint in this court for lack of jurisdiction and on the ground that the Attorney General had no authority to bring it. This motion was overruled.

At the later trial of the action the plaintiff offered in evidence an admittedly correct and duly certified copy of the original German patent and file showing the Kurtz application for the patent in question filed on July 10, 1939, in the German Patent Office. This was received in evidence without objection. It was admitted by defendant that the German patent application discloses the invention in question and that the filing in Germany was with the knowledge and consent of Kurtz.

There was also placed in evidence the complete record of the case in the Patent Office. On the showing made by the plaintiff, statutory conditions as to time having been complied with, it seems clear that the Kurtz application in this country should be followed by the issuance of a patent.

The defendant, however, objects on two grounds and contends that under recognized authority: (1) the decision of the Patent Office should be accepted as controlling in refusing Kurtz a date of invention before June 29, 1940 (the date of his filing an application in this country) and (2) that the decision of the Patent Office should not be accepted as controlling in refusing Heuser a date of invention before November, 1939, when it was found that he reduced the invention to practice.

As support for the first of these seemingly contradictory contentions the defendant rests heavily upon the leading case of Morgan v. Daniels 153 U.S. 120, 14 S.Ct. 772, 773, 38 L.Ed. 657. Naturally that case must be regarded as authority. The only question open is the extent of its applicability. I cannot escape the conclusion that it is squarely applicable to the decision in the Patent Office that the defendant is not entitled to a date of invention prior to November, 1939, but that it is no obstacle to the consideration in this Court of the new evidence of the earlier filing in Germany in behalf of the plaintiff, or to a judgment for the plaintiff in this action, for the following reasons:

In Morgan v. Daniels, the Court said, referring to a proceeding such as this: "It is something in the nature of a suit to set aside a judgment, and, as such is not to be sustained by a mere preponderance of evidence. * * * It is a controversy between two individuals over a question of fact which has once been settled by a special tribunal, entrusted with full power in the premises. As such it might be well argued, were it not for the terms of the statute, that the decision of the patent office was a finality upon every matter of fact. * * * Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any

subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

The record of the Interference proceedings in the Patent Office shows that the first and controlling question considered there was the allegation of Heuser that he had conceived the invention in July, 1935, and reduced it to practice in October, 1938, while Kurtz was relying on his German convention date of July, 1939. Both parties were represented by counsel and filed briefs. Heuser presented the testimony of seven witnesses in support of his claims. It was finally established to the satisfaction of the Board that Heuser had no complete conception of the process of the invention before November, 1939, about which time he reduced it to practice, and the Board so found as a matter of fact from the evidence. Heuser requested reconsideration of this finding and the factual aspects of the case were further considered with the final result that the Board decided on May 10, 1946, that "the decision of April 3, 1946, is adhered to in all respects."

■ It is quite clear that, nothing else appearing, in view of Morgan v. Daniels, this Court has no further business with the decision on this question of fact, so peculiarly within the technical field of the Patent Office. But the defendant has seen fit, as is its right, in this trial de novo, to put in further evidence in support of its claim to a date prior to November, 1939. This consisted of the testimony of one witness who had also testified before the Patent Office. His rather brief testimony however did not cover the whole ground upon which a date of invention must be based, more or less ignoring the matter of reduction to practice. Even with this negligible amount of testimony added the defendant's contention cannot survive the test laid down in Morgan v. Daniels, the theory of which is aptly summarized by the statement of the Court in Dowling v. Jones, 2 Cir., 67 F.2d 537, 538, "* * * we decide the appeal on the assumption that the findings of the Patent Office must prevail unless we cannot avoid an opposite conclusion."

It follows that the decision of the Patent Office on the disputed question of fact involving the defendant's date of invention must be regarded as controlling.

■ The applicability of the principle established in Morgan v. Daniels to the plaintiff's contention that he is entitled to a date of invention as of the filing of the Kurtz application in Germany,—being prior to the date awarded Heuser,—is another matter. I fail to find any question of fact decided by the Patent Office that I would decide differently on the same evidence, or any conclusion of fact arrived at by it that requires a contrary conclusion in order to give judgment for the plaintiff in this suit. The point decided in the Interference proceeding that stopped the plaintiff in the Patent Office was that he had failed to furnish proper proof of his alleged filing in Germany. No fault, I think, can be found with that decision. The reasons given by the Board for not accepting the uncertified copies of the German application in evidence are persuading. But that, of course, does not affect the action of this court when proper and sufficient proof is furnished.

The defendant contends, however, and in fact it largely rests its case on the point that this Court cannot consider the now admittedly prior date of filing by Kurtz in Germany, because of the decision by the Board against the plaintiff on his request for a reopening of the Interference proceeding.

As I view it, the defendant's attempt to use Morgan v. Daniels as a support for this contention must fail.

The question put to the Board to decide was "the propriety of reopening the Interference" to hear alleged newly discovered evidence. Its decision was against reopening on the ground (1) that the plaintiff had not been diligent in finding the evidence, (2) that a decision after reopening might be rendered nugatory by a decision of this Court in which the action was then pending. As will be seen above from the quotation from the decision, emphasis seems to have been placed on the latter reason.

■ The Board made no decision as to whether or not the plaintiff would be enti-

tled to a patent on the new evidence. It simply refused to consider it. It exercised its discretion in so handling that matter of internal procedure for reasons that seemed to it sufficient. No contrary judgment is asked for here or required. The matter of reopening the Interference proceedings in the Patent Office is closed. The issue here is not the propriety of reopening the Interference proceeding, but whether, on the present evidence, the plaintiff is entitled to a date of invention prior to that of the defendant. It is clear that he is, unless there is some reason why the evidence of his filing in Germany, now before this Court, cannot be permitted to have its legal effect.

██ Against this the defendant makes the same objection that it did to reopening the Interference. This, however, is a different proceeding. No question of the admissibility of the evidence, which has been heard without objection, is involved. I can see no reason why it should not have its normal effect and weight. The defendant thinks otherwise because of alleged lack of diligence in getting the evidence. While the alleged lack of diligence could perhaps be better described as lack of acumen, I don't regard that feature as a factor in this proceeding. The defendant has cited cases where a party was penalized for suppression of evidence before the Patent Office, but, obviously, this is just the reverse. The plaintiff was trying to get the evidence before the Patent Office. Moreover the effect of the alleged negligence would not reach to the point of depriving the plaintiff of his legal right to a patent, even if it should be considered a factor. It appears that the evidence the plaintiff was seeking was all the time in the defendant's file, from which it seems that the defendant could not have been particularly surprised or prejudiced at its final production.

All the requirements of the statutes having been satisfied, with the new evidence now in the case, the plaintiff having shown himself entitled to his filing in Germany on July 10, 1939, as his date of invention, it follows that the plaintiff is entitled to judgment, with costs of court, which will be rendered accordingly.