(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KAPPOS, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, PATENT AND TRADEMARK OFFICE *v.* HYATT

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 10–1219.  Argued January 9, 2012—Decided April 18, 2012

Under the Patent Act of 1952, if a Patent and Trade Office (PTO) examiner denies a patent application, 35 U. S. C. §131, the applicant may file an administrative appeal with the PTO's Board of Patent Appeals and Interferences, §134.  If the Board also denies the application, the applicant may appeal directly to the Court of Appeals for the Federal Circuit under §141.  Alternatively, the applicant may file a civil action against the PTO Director under §145, which permits the applicant to present evidence that was not presented to the PTO.

  Respondent Hyatt filed a patent application covering multiple claims.  The patent examiner denied all of the claims for lack of an adequate written description.  Hyatt appealed to the Board, which approved some claims but denied others.  Pursuant to §145, Hyatt filed a civil action against the Director, but the District Court declined to consider Hyatt's newly proffered written declaration in support of the adequacy of his description, thus limiting its review to the administrative record.  Applying the deferential "substantial evidence" standard of the Administrative Procedure Act (APA) to the PTO's factual findings, the court granted summary judgment to the Director.  On appeal, the Federal Circuit vacated the judgment, holding that patent applicants can introduce new evidence in §145 proceedings, subject only to the limitations in the Federal Rules of Evidence and the Federal Rules of Civil Procedure.  It also reaffirmed its precedent that when new, conflicting evidence is introduced, the district court must make *de novo* findings to take such evidence into account.

*Held:* There are no limitations on a patent applicant's ability to intro-
duce new evidence in a §145 proceeding beyond those already present
in the Federal Rules of Evidence and the Federal Rules of Civil Pro-
cedure. If new evidence is presented on a disputed question of fact,
the district court must make *de novo* factual findings that take ac-
count of both the new evidence and the administrative record before
the PTO. Pp. 5−14.

    (a) Section 145, by its express terms, neither imposes unique evi-
dentiary limits in district court proceedings nor establishes a height-
ened standard of review for PTO factual findings. Nonetheless, the
Director contends that background principles of administrative law
govern the admissibility of new evidence and impose a deferential
standard of review in §145 proceedings. As the Director concedes,
however, judicial review in §145 proceedings is not limited to the ad-
ministrative record because the district court may consider new evi-
dence. If it does so, the district court must act as a factfinder and
cannot apply the APA's deferential standard to PTO factual findings
when those findings are contradicted by new evidence. Moreover, the
doctrine of administrative exhaustion—the primary purpose of which
is "the avoidance of premature interruption of the administrative
process," *McKart* v. *United States*, 395 U. S. 185, 193—does not apply
because the PTO process is complete by the time a §145 proceeding
occurs. Pp. 5−7.

    (b) The core language of the 1870 Patent Act, codified as Revised
Statute §4915 (R. S. 4915), remains largely unchanged in §145. Deci-
sions interpreting R. S. 4915 thus inform this Court's understanding
of §145. Both *Butterworth* v. *United States ex rel. Hoe*, 112 U. S. 50,
and *Morgan* v. *Daniels*, 153 U. S. 120, describe the nature of R. S.
4915 proceedings, but the two opinions can be perceived as being in
some tension. *Butterworth* described the proceeding as an original
civil action seeking *de novo* adjudication of the merits of a patent ap-
plication, while *Morgan* described it as a suit for judicial review of
agency action under a deferential standard. The cases are distin-
guishable, however, because they addressed different circumstances.
*Butterworth* discussed a patent applicant's challenge to the denial of
his application, whereas *Morgan* involved an interference proceeding
that would now be governed by §146, not §145, and in which no new
evidence was presented. Here, this Court is concerned only with a
§145 proceeding in which new evidence was presented to the District
Court, so *Butterworth* guides this Court's decision. Thus, a district
court conducting a §145 proceeding may consider all competent evi-
dence adduced and is not limited to considering only new evidence
that could not have been presented to the PTO. The introduction of
new evidence in §145 proceedings is subject only to the Federal Rules

of Evidence and the Federal Rules of Civil Procedure, and if new evidence is presented to the district court on a disputed factual question, *de novo* findings by the district court will be necessary for that new evidence to be taken into account along with the evidence before the Board. Pp. 7–13.

  (c) The district court may, however, consider whether the applicant had an opportunity to present the newly proffered evidence before the PTO in deciding what weight to afford that evidence. Pp. 13–14.

625 F. 3d 1320, affirmed and remanded.

  THOMAS, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, in which BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–1219

DAVID J. KAPPOS, UNDER SECRETARY OF COM-
MERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR, PATENT AND TRADEMARK OF-
FICE, PETITIONER *v.* GILBERT P. HYATT

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[April 18, 2012]

JUSTICE THOMAS delivered the opinion of the Court.

The Patent Act of 1952, 35 U. S. C. §100 *et seq.*, grants a patent applicant whose claims are denied by the Patent and Trademark Office (PTO) the opportunity to challenge the PTO's decision by filing a civil action against the Director of the PTO in federal district court. In such a proceeding, the applicant may present evidence to the district court that he did not present to the PTO. This case requires us to consider two questions. First, we must decide whether there are any limitations on the applicant's ability to introduce new evidence before the district court. For the reasons set forth below, we conclude that there are no evidentiary restrictions beyond those already imposed by the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Second, we must determine what standard of review the district court should apply when considering new evidence. On this question, we hold that the district court must make a *de novo* finding when new evidence is presented on a disputed question of fact.

In deciding what weight to afford that evidence, the district court may, however, consider whether the applicant had an opportunity to present the evidence to the PTO.

## I

The Patent Act of 1952 establishes the process by which the PTO examines patent applications. A patent examiner first determines whether the application satisfies the statutory prerequisites for granting a patent. 35 U. S. C. §131. If the examiner denies the application, the applicant may file an administrative appeal with the PTO's Board of Patent Appeals and Interferences (Board). §134. If the Board also denies the application, the Patent Act gives the disappointed applicant two options for judicial review of the Board's decision. The applicant may either: (1) appeal the decision directly to the United States Court of Appeals for the Federal Circuit, pursuant to §141; or (2) file a civil action against the Director of the PTO in the United States District Court for the District of Columbia pursuant to §145.[1]

In a §141 proceeding, the Federal Circuit must review the PTO's decision on the same administrative record that was before the PTO. §144. Thus, there is no opportunity for the applicant to offer new evidence in such a proceeding. In *Dickinson* v. *Zurko*, 527 U. S. 150 (1999), we ad-

———————

[1]On September 16, 2011, the President signed the Leahy-Smith America Invents Act, 125 Stat. 284, into law. That Act made significant changes to Title 35 of the United States Code, some of which are related to the subject matter of this case. For example, the Act changed the venue for §145 actions from the United States District Court for the District of Columbia to the United States District Court for the Eastern District of Virginia, *id.,* at 316, changed the name of the Board of Patent Appeals and Interferences to the Patent Trial and Appeal Board, *id.,* at 290, and changed the name of interferences to derivation proceedings, *ibid.* Neither party contends that the Act has any effect on the questions before us, and all references and citations in this opinion are to the law as it existed prior to the Act.

dressed the standard that governs the Federal Circuit's review of the PTO's factual findings. We held that the Administrative Procedure Act (APA), 5 U. S. C. §701 *et seq.*, applies to §141 proceedings and that the Federal Circuit therefore should set aside the PTO's factual findings only if they are "'unsupported by substantial evidence.'" 527 U. S., at 152 (quoting 5 U. S. C. §706).

In *Zurko*, we also noted that, unlike §141, §145 permits the applicant to present new evidence to the district court that was not presented to the PTO. 527 U. S., at 164. This opportunity to present new evidence is significant, not the least because the PTO generally does not accept oral testimony. See Brief for Petitioner 40, n. 11. We have not yet addressed, however, whether there are any limitations on the applicant's ability to introduce new evidence in such a proceeding or the appropriate standard of review that a district court should apply when considering such evidence.

II

In 1995, respondent Gilbert Hyatt filed a patent application that, as amended, included 117 claims. The PTO's patent examiner denied each claim for lack of an adequate written description. See 35 U. S. C. §112 (requiring patent applications to include a "specification" that provides, among other information, a written description of the invention and of the manner and process of making and using it). Hyatt appealed the examiner's decision to the Board, which eventually approved 38 claims, but denied the rest. Hyatt then filed a §145 action in Federal District Court against the Director of the PTO (Director), petitioner here.

To refute the Board's conclusion that his patent application lacked an adequate written description, Hyatt submitted a written declaration to the District Court. In the declaration, Hyatt identified portions of the patent specifi-

cation that, in his view, supported the claims that the Board held were not patentable. The District Court determined that it could not consider Hyatt's declaration because applicants are "'precluded from presenting new issues, at least in the absence of some reason of justice put forward for failure to present the issue to the Patent Office.'" *Hyatt* v. *Dudas*, Civ. Action No. 03–0901 (D DC, Sept. 30, 2005), p. 9, App. to Pet. for Cert. 182a (quoting *DeSeversky* v. *Brenner*, 424 F. 2d 857, 858 (CADC 1970)). Because the excluded declaration was the only additional evidence submitted by Hyatt in the §145 proceeding, the evidence remaining before the District Court consisted entirely of the PTO's administrative record. Therefore, the District Court reviewed all of the PTO's factual findings under the APA's deferential "substantial evidence" standard. See *supra,* at 2; see also *Mazzari* v. *Rogan*, 323 F. 3d 1000, 1004–1005 (CA Fed. 2003). Applying that standard, the District Court granted summary judgment to the Director.

Hyatt appealed to the Federal Circuit. A divided panel affirmed, holding that the APA imposed restrictions on the admission of new evidence in a §145 proceeding and that the district court's review is not "wholly de novo." *Hyatt* v. *Doll*, 576 F. 3d 1246, 1269–1270 (2009). The Federal Circuit granted rehearing en banc and vacated the District Court's grant of summary judgment. The en banc court first held "that Congress intended that applicants would be free to introduce new evidence in §145 proceedings subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the Federal Rules of Civil Procedure," even if the applicant had no justification for failing to present the evidence to the PTO. 625 F. 3d 1320, 1331 (2010). Reaffirming its precedent, the court also held that when new, conflicting evidence is introduced in a §145 proceeding, the district court must make *de novo* findings to take such evidence into account. *Id.,* at

1336. We granted certiorari, 564 U. S. ___ (2011), and now affirm.

## III

The Director challenges both aspects of the Federal Circuit's decision. First, the Director argues that a district court should admit new evidence in a §145 action only if the proponent of the evidence had no reasonable opportunity to present it to the PTO in the first instance. Second, the Director contends that, when new evidence is introduced, the district court should overturn the PTO's factual findings only if the new evidence clearly establishes that the agency erred. Both of these arguments share the premise that §145 creates a special proceeding that is distinct from a typical civil suit filed in federal district court and that is thus governed by a different set of procedural rules. To support this interpretation of §145, the Director relies on background principles of administrative law and pre-existing practice under a patent statute that predated §145. For the reasons discussed below, we find that neither of these factors justifies a new evidentiary rule or a heightened standard of review for factual findings in §145 proceedings.

## A

To address the Director's challenges, we begin with the text of §145. See, *e.g., Magwood* v. *Patterson*, 561 U. S. ___, ___ (2010) (slip op., at 10). Section 145 grants a disappointed patent applicant a "remedy by civil action against the Director." The section further explains that the district court "may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the [PTO], as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law." By its terms, §145

neither imposes unique evidentiary limits in district court proceedings nor establishes a heightened standard of review for factual findings by the PTO.

## B

In the absence of express support for his position in the text of §145, the Director argues that the statute should be read in light of traditional principles of administrative law, which Congress codified in the APA. The Director notes that §145 requires a district court to review the reasoned decisionmaking of the PTO, an executive agency with specific authority and expertise. Accordingly, the Director contends that a district court should defer to the PTO's factual findings. The Director further contends that, given the traditional rule that a party must exhaust his administrative remedies, a district court should consider new evidence only if the party did not have an opportunity to present it to the agency.

We reject the Director's contention that background principles of administrative law govern the admissibility of new evidence and require a deferential standard of review in a §145 proceeding. Under the APA, judicial review of an agency decision is typically limited to the administrative record. See 5 U. S. C. §706. But, as the Director concedes, §145 proceedings are not so limited, for the district court may consider new evidence. When the district court does so, it must act as a factfinder. *Zurko*, 527 U. S., at 164. In that role, it makes little sense for the district court to apply a deferential standard of review to PTO factual findings that are contradicted by the new evidence. The PTO, no matter how great its authority or expertise, cannot account for evidence that it has never seen. Consequently, the district court must make its own findings *de novo* and does not act as the "reviewing court" envisioned by the APA. See 5 U. S. C. §706.

We also conclude that the principles of administrative

exhaustion do not apply in a §145 proceeding. The Director argues that applicants must present all available evidence to the PTO to permit the PTO to develop the necessary facts and to give the PTO the opportunity to properly apply the Patent Act in the first instance. Brief for Petitioner 21–22 (citing *McKart* v. *United States*, 395 U. S. 185, 193–194 (1969)). But as this Court held in *McKart*, a primary purpose of administrative exhaustion "is, of course, the avoidance of premature interruption of the administrative process." *Id.*, at 193. That rationale does not apply here because, by the time a §145 proceeding occurs, the PTO's process is complete. Section 145, moreover, does not provide for remand to the PTO to consider new evidence, and there is no pressing need for such a procedure because a district court, unlike a court of appeals, has the ability and the competence to receive new evidence and to act as a factfinder. In light of these aspects of §145 proceedings—at least in those cases in which new evidence is presented to the district court on a disputed question of fact—we are not persuaded by the Director's suggestion that §145 proceedings are governed by the deferential principles of agency review.

C

Having concluded that neither the statutory text nor background principles of administrative law support an evidentiary limit or a heightened standard of review for factual findings in §145 proceedings, we turn to the evidentiary and procedural rules that were in effect when Congress enacted §145 in 1952. Although §145 is a relatively modern statute, the language in that provision originated in the Act of July 8, 1870 (1870 Act), ch. 230, 16 Stat. 198, and the history of §145 proceedings can be traced back to the Act of July 4, 1836 (1836 Act), ch. 357, 5 Stat. 117. Thus, we begin our inquiry with the 1836 Act, which established the Patent Office, the PTO's predeces-

sor, and first authorized judicial review of its decisions.

                              1

   The 1836 Act provided that a patent applicant could
bring a bill in equity in federal district court if his applica-
tion was denied on the ground that it would interfere
with another patent.  *Id.*, at 123–124; see also B. Ship-
man, Handbook of the Law of Equity Pleading §§101–103,
pp. 168–171 (1897).  Three years later, Congress expanded
that provision, making judicial review available whenever
a patent was refused on any ground.  Act of Mar. 3, 1839
(1839 Act), 5 Stat. 354.  Pursuant to these statutes, any
disappointed patent applicant could file a bill in equity to
have the district court "adjudge" whether the applicant
was "entitled, according to the principles and provisions
of [the Patent Act], to have and receive a patent for his
invention."  1836 Act, 5 Stat. 124.

   In 1870, Congress amended the Patent Act again, add-
ing intermediate layers of administrative review and in-
troducing language describing the proceeding in the
district court.  16 Stat. 198.  Under the 1870 Act, an appli-
cant denied a patent by the primary examiner could ap-
peal first to a three-member board of examiners-in-chief,
then to the Commissioner for Patents, and finally to an en
banc sitting of the Supreme Court of the District of Co-
lumbia.[2]  *Id.*, at 205.  Notably, Congress described that
court's review as an "appeal" based "on the evidence pro-
duced before the commissioner."  *Ibid.*  The 1870 Act
preserved the prior remedy of a bill in equity in district
court for the applicant whose appeal was denied either by

_____

   [2] The Supreme Court of the District of Columbia was a trial court
created by Congress in 1863.  Act of Mar. 3, 1863, ch. 91, 12 Stat. 762.
Although the court was generally one of first instance, it also func-
tioned as an appellate court when it sat en banc.  Voorhees, The Dis-
trict of Columbia Courts: A Judicial Anomaly, 29 Cath. U. L. Rev. 917,
923 (1980).

the Commissioner or by the Supreme Court of the District
of Columbia. *Ibid.* The district court, in a proceeding that
was distinct from the appeal considered on the adminis-
trative record by the Supreme Court of the District of
Columbia, would "adjudge" whether the applicant was
"entitled, according to law, to receive a patent for his
invention . . . as the facts in the case may appear." *Ibid.*
In 1878, Congress codified this provision of the 1870 Act
as Revised Statute §4915 (R. S. 4915). That statute was
the immediate predecessor to §145, and its core language
remains largely unchanged in §145. Accordingly, both
parties agree that R. S. 4915 and the judicial decisions
interpreting that statute should inform our understanding
of §145.

2

This Court described the nature of R. S. 4915 proceed-
ings in two different cases: *Butterworth* v. *United States ex
rel. Hoe*, 112 U. S. 50 (1884), and *Morgan* v. *Daniels*, 153
U. S. 120 (1894). In *Butterworth*, the Court held that the
Secretary of the Interior, the head of the federal depart-
ment in which the Patent Office was a bureau, had no
authority to review a decision made by the Commissioner
of Patents in an interference proceeding. In its discussion,
the Court described the remedy provided by R. S. 4915 as

> "a proceeding in a court of the United States having
> original equity jurisdiction under the patent laws, ac-
> cording to the ordinary course of equity practice and
> procedure. It is not a technical appeal from the
> Patent-Office, like that authorized [before the Su-
> preme Court of the District of Columbia], confined to
> the case as made in the record of that office, but is
> prepared and heard upon all competent evidence ad-
> duced and upon the whole merits." 112 U. S., at 61.

The *Butterworth* Court also cited several lower court

cases, which similarly described R. S. 4915 proceedings
as "altogether independent" from the hearings before the
Patent Office and made clear that the parties were "at
liberty to introduce additional evidence" under "the rules
and practice of a court of equity." *In re Squire*, 22 F. Cas.
1015, 1016 (No. 13,269) (CC ED Mo. 1877); see also *Whipple* v. *Miner*, 15 F. 117, 118 (CC Mass. 1883) (describing
the federal court's jurisdiction in an R. S. 4915 proceeding
as "an independent, original jurisdiction"); *Butler* v. *Shaw*,
21 F. 321, 327 (CC Mass. 1884) (holding that "the court
may receive new evidence, and has the same powers as in
other cases in equity").

Ten years later, in *Morgan*, this Court again confronted
a case involving proceedings under R. S. 4915. 153 U. S.
120. There, a party challenged a factual finding by the
Patent Office, but neither side presented additional evidence in the District Court. *Id.*, at 122–123. This Court
described the parties' dispute as one over a question of
fact that had already "been settled by a special tribunal
[e]ntrusted with full power in the premises" and characterized the resulting District Court proceeding not as an
independent civil action, but as "something in the nature
of a suit to set aside a judgment." *Id.*, at 124. Consistent
with that view, the Court held that the agency's findings
should not be overturned by "a mere preponderance of
evidence." *Ibid.*

Viewing *Butterworth* and *Morgan* together, one might
perceive some tension between the two cases. *Butterworth*
appears to describe an R. S. 4915 proceeding as an original
civil action, seeking *de novo* adjudication of the merits of
a patent application. *Morgan*, on the other hand, appears
to describe an R. S. 4915 proceeding as a suit for judicial
review of agency action, governed by a deferential standard of review. To resolve that apparent tension, the Director urges us to disregard the language in *Butterworth* as
mere dicta and to follow *Morgan*. He argues that *Butter-*

*worth* "shed[s] no light on the extent to which new evidence was admissible in R. S. 4915 proceedings or on the standard of review that applied in such suits." Brief for Petitioner 33. The Director maintains that *Morgan*, in contrast, firmly established that a district court in such a proceeding performs a deferential form of review, governed by traditional principles of administrative law. We reject the Director's position.[3]

We think that the differences between *Butterworth* and *Morgan* are best explained by the fact that the two cases addressed different circumstances. *Butterworth* discussed the character of an R. S. 4915 proceeding in which a disappointed patent applicant challenged the Board's denial of his application. Although that discussion was not strictly necessary to *Butterworth*'s holding it was also not the kind of ill-considered dicta that we are inclined to ignore. The *Butterworth* Court carefully examined the various provisions providing relief from the final denial of a patent application by the Commissioner of Patents to determine that the Secretary of the Interior had no role to play in that process. 112 U. S., at 59–64. The Court further surveyed the decisions of the lower courts with regard to the nature of an R. S. 4915 proceeding and concluded that its view was "the uniform and correct practice in the Circuit Courts." *Id.*, at 61. We note that this Court reiterated *Butterworth*'s well-reasoned interpretation of R. S. 4915 in three later cases.[4]

––––––––

[3] Both parties cite additional cases from the lower courts that they claim support their view of the statute, but these cases are too diverse to support any firm inferences about Congress' likely intent in enacting §145.

[4] In *Gandy* v. *Marble*, 122 U. S. 432 (1887), the Court described an R. S. 4915 proceeding as "a suit according to the ordinary course of equity practice and procedure" rather than a "technical appeal from the Patent Office." *Id.,* at 439 (citing *Butterworth*, 112 U. S., at 61). Likewise, in *In re Hien*, 166 U. S. 432 (1897), the Court distinguished an R. S. 4915 proceeding from the "'technical appeal from the Patent

*Morgan*, on the other hand, concerned a different situation from the one presented in this case. First, *Morgan* addressed an interference proceeding. See 153 U. S., at 125 (emphasizing that "the question decided in the Patent Office is one between contesting parties as to priority of invention"). Although interference proceedings were previously governed by R. S. 4915, they are now governed by a separate section of the Patent Act, 35 U. S. C. §146, and therefore do not implicate §145. In addition, *Morgan* did not involve a proceeding in which new evidence was presented to the District Court. See 153 U. S*.,* at 122 (stating that the case "was submitted, without any additional testimony, to the Circuit Court").

3

Because in this case we are concerned only with §145 proceedings in which new evidence has been presented to the District Court, *Butterworth* rather than *Morgan* guides our decision. In *Butterworth*, this Court observed that an R. S. 4915 proceeding should be conducted "according to the ordinary course of equity practice and procedure" and that it should be "prepared and heard upon all competent evidence adduced and upon the whole merits." 112 U. S., at 61. Likewise, we conclude that a district court conducting a §145 proceeding may consider "all competent evidence adduced," *id.,* at 61, and is not limited to considering only new evidence that could not have been presented to the PTO. Thus, we agree with the Federal Circuit that "Congress intended that applicants would be free to introduce new evidence in §145 proceedings subject only to the rules applicable to all civil actions, the Federal

---

Office'" authorized under R. S. 4911, the predecessor to current §141. *Id.,* at 439 (quoting *Butterworth*, *supra*, at 61). And, finally, in *Hoover Co.* v. *Coe*, 325 U. S. 79 (1945), the Court cited *Butterworth* to support its description of an R. S. 4915 proceeding as a "formal trial." 325 U. S., at 83, and n. 4.

Rules of Evidence and the Federal Rules of Civil Procedure." 625 F. 3d, at 1331.

We also agree with the Federal Circuit's longstanding view that, "where new evidence is presented to the district court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the board." *Fregeau* v. *Mossinghoff*, 776 F. 2d 1034, 1038 (1985). As we noted in *Zurko*, the district court acts as a factfinder when new evidence is introduced in a §145 proceeding. 527 U. S., at 164. The district court must assess the credibility of new witnesses and other evidence, determine how the new evidence comports with the existing administrative record, and decide what weight the new evidence deserves. As a logical matter, the district court can only make these determinations *de novo* because it is the first tribunal to hear the evidence in question. Furthermore, a *de novo* standard adheres to this Court's instruction in *Butterworth* that an R. S. 4915 proceeding be heard "upon the whole merits" and conducted "according to the ordinary course of equity practice and procedure." 112 U. S., at 61.

D

Although we reject the Director's proposal for a stricter evidentiary rule and an elevated standard of review in §145 proceedings, we agree with the Federal Circuit that the district court may, in its discretion, "consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence." 625 F. 3d, at 1335. Though the PTO has special expertise in evaluating patent applications, the district court cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts. *Supra,* at 8; cf. *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 19) (noting that "if the PTO did not have all material facts before it, its

considered judgment may lose significant force"). For this reason, we conclude that the proper means for the district court to accord respect to decisions of the PTO is through the court's broad discretion over the weight to be given to evidence newly adduced in the §145 proceedings.

The Director warns that allowing the district court to consider all admissible evidence and to make *de novo* findings will encourage patent applicants to withhold evidence from the PTO intentionally with the goal of presenting that evidence for the first time to a nonexpert judge. Brief for Petitioner 23. We find that scenario unlikely. An applicant who pursues such a strategy would be intentionally undermining his claims before the PTO on the speculative chance that he will gain some advantage in the §145 proceeding by presenting new evidence to a district court judge.

IV

For these reasons, we conclude that there are no limitations on a patent applicant's ability to introduce new evidence in a §145 proceeding beyond those already present in the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Moreover, if new evidence is presented on a disputed question of fact, the district court must make *de novo* factual findings that take account of both the new evidence and the administrative record before the PTO. In light of these conclusions, the Federal Circuit was correct to vacate the judgment of the District Court, which excluded newly presented evidence under the view that it "need not consider evidence negligently submitted after the end of administrative proceedings." Civ. Action No. 03–0901, at 15, App. to Pet. for Cert. 189a.

The judgment is affirmed, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–1219

_____

## DAVID J. KAPPOS, UNDER SECRETARY OF COM-MERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, PATENT AND TRADEMARK OF-FICE, PETITIONER *v.* GILBERT P. HYATT

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 18, 2012]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, concurring.

As the Court today recognizes, a litigant in a 35 U. S. C. §145 proceeding is permitted to introduce evidence not presented to the Patent and Trademark Office (PTO) "'according to the ordinary course of equity practice and procedure.'" *Ante,* at 9 (quoting *Butterworth* v. *United States ex rel. Hoe*, 112 U. S. 50, 61 (1884)). Dating back to §145's original predecessor, Congress contemplated that courts would manage such actions "according to the course and principles of courts of equity." Act of July 4, 1836, ch. 357, §17, 5 Stat. 124. And this Court and other courts have acknowledged and applied that principle on numerous occasions. See, *e.g., Gandy* v. *Marble*, 122 U. S. 432, 439 (1887) (describing Rev. Stat. 4915 (R. S. 4915) proceeding as "a suit according to the ordinary course of equity practice and procedure"); *In re Hien*, 166 U. S. 432, 438 (1897) (same); *In re Squire*, 22 F. Cas. 1015, 1016 (No. 13,269) (CC ED Mo. 1877) (in an R. S. 4915 proceeding, the parties were "at liberty to introduce additional evidence" under "the rules and practice of a court of equity"); *ante,* at 10, 12, n. 4 (citing same cases).

Consistent with ordinary equity practice and procedure,

there may be situations in which a litigant's conduct
before the PTO calls into question the propriety of admit-
ting evidence presented for the first time in a §145 pro-
ceeding before a district court.  The most well-known
example was presented in *Barrett Co.* v. *Koppers Co.*, 22 F.
2d 395, 396 (CA3 1927), a case in which the Barrett Com-
pany, during proceedings before the Patent Office, "ex-
pressly refused to disclose and to allow their witnesses
to answer questions" essential to establishing the priority
of its invention.  After the Patent Office ruled against it,
the Barrett Company attempted to present in a subsequent
R. S. 4915 proceeding "the very subject-matter concerning
which . . . witnesses for the [patent] application were
asked questions and the Barrett Company forbade them to
answer."  *Id.,* at 396.  The Third Circuit understandably
found the Barrett Company estopped from introducing
evidence that it had "purposely" withheld from prior fact-
finders, lest the company be allowed "to profit by [its] own
. . . wrong doing."  *Id.,* at 397.  See also *Dowling* v. *Jones*,
67 F. 2d 537, 538 (CA2 1933) (L. Hand, J.) (describing
*Barrett* as a case in which "the Third Circuit refused to
consider evidence which the inventor had deliberately
suppressed").

  For the reasons the Court articulates, §145 proceedings
are not limited to the administrative record developed be-
fore the PTO and applicants are entitled to present new
evidence to the district court.  Accordingly, as Judge
Hand suggested, a court's equitable authority to exclude
evidence in such proceedings is limited, and must be
exercised with caution.  See *Dowling*, 67 F. 2d, at 538
(describing as "doubtful" the proposition that a court should
exclude evidence that was "not suppressed, but merely
neglected" before the Patent Office).  Thus, when a patent
applicant fails to present evidence to the PTO due to
ordinary negligence, a lack of foresight, or simple attorney
error, the applicant should not be estopped from present-

ing the evidence for the first time in a §145 proceeding.

Because there is no suggestion here that the applicant's failure to present the evidence in question to the PTO was anything other than the product of negligence or a lack of foresight, I agree that the applicant was entitled to present his additional evidence to the District Court. But I do not understand today's decision to foreclose a district court's authority, consistent with "'the ordinary course of equity practice and procedure,'" *ante,* at 13 (quoting *Butterworth*, 112 U. S., at 61), to exclude evidence "deliberately suppressed" from the PTO or otherwise withheld in bad faith. For the reasons set out by the Court, see *ante,* at 13–14, an applicant has little to gain by such tactics; such cases will therefore be rare. In keeping with longstanding historical practice, however, I understand courts to retain their ordinary authority to exclude evidence from a §145 proceeding when its admission would be inconsistent with regular equity practice and procedure.

With those observations, I join the Court's opinion in full.